796 A.2d 75

**MOTOR VEHICLE ADMINISTRATION,**

v.

**Knowlton R. ATTERBEARY.**

**No. 76, Sept. Term 2001.**

Court of Appeals of Maryland.

April 9, 2002.

482

Valerie Johnston Smith, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen. of Maryland, on brief), Glen Burnie, for petitioner/cross-respondent.

Reginald W. Bours, III (Reginald W. Bours, III, P.C., on brief), Rockville, for respondent/cross-petitioner.

Argued before BELL, C.J., ELDRIDGE, RAKER, WILNER, CATHELL, HARRELL, and BATTAGLIA, JJ.

BATTAGLIA, Judge.

Petitioner, Motor Vehicle Administration (hereinafter "MVA"), asks us to consider what constitutes a refusal to submit to a blood alcohol concentration test in light of the two hour time limitation for such tests imposed by Maryland Code (1974, 1998 Repl.Vol.), Section 10–303 of the Courts and Judicial Proceedings Article, where the individual suspected of driving while intoxicated has expressed a desire to consult with an attorney prior to making a test decision. Respondent, Knowlton Atterbeary, filed a cross-petition requesting consideration of what conduct constitutes driving or attempting to drive for purposes of triggering the implied consent provisions of Maryland Code (1977, 1999 Repl.Vol.), Section 16–205.1(a)(2) of the Transportation Article.

## I. Facts

In the early morning hours of April 22, 2000, the Montgomery County Police received a call from fire and rescue personnel requesting assistance with an individual, later determined to be the respondent, Atterbeary, who was slumped behind the wheel of his car at 3121 Automotive Boulevard in front of the Herb Gordon Oldsmobile dealership. Montgomery County Police Officers Mondini and Williams responded to the call. Upon arrival at the scene, Officer Mondini observed Atterbeary sitting in the driver's seat of his Mercedes with the keys in the ignition, the engine running, and the dome light illumi-

nated. Officer Mondini was advised by the Fire/Rescue personnel that they had attempted to speak to Atterbeary, but that he refused to get out of his car and would only roll down the window about an inch. Officer Mondini iterated his need to speak with Atterbeary twice, after which Atterbeary rolled down the window far enough for the officer to reach inside and unlock the door. Officer Mondini noticed Atterbeary's slurred speech and bloodshot eyes as well as a strong odor of alcohol emanating from him.

Officer Mondini attempted to administer several field sobriety tests to Atterbeary, including the horizontal gaze nystagmus, walk and turn, and one-leg stand, to no avail. Each time the officer gave the instruction to perform the test, Atterbeary responded that he did not understand. When the officer repeated the instructions, Atterbeary said he could not hear the officer. After the third attempt at clarifying the instructions, Atterbeary performed each test and failed them. Thereafter, Officer Mondini took Atterbeary to the police station in Silver Spring.

At the police station, according to the testimony of Officer Mondini, the officer read the DR–15 Form[1] to Atterbeary, and Atterbeary indicated his willingness to take the breathal-

---

1. The DR–15 Form, sometimes referred to as The Advice of Rights and Administrative Penalties for Refusal to Submit to a Chemical Test statement, is derived from Section 16–205.1(b) of the Maryland Transportation Article; it provides in part:

You have been stopped or detained and reasonable grounds exist to believe that you have been driving or attempting to drive a motor vehicle while intoxicated; under the influence of alcohol; so far under the influence of any drug, any combination of drugs, or a combination of one or more drugs and alcohol, or under the influence of a controlled dangerous substance that you could not drive a vehicle safely; or in violation of an Alcohol Restriction.

In this state, any person who drives or attempts to drive a motor vehicle, including a commercial motor vehicle, on a highway or on any private property that is used by the public in general, is deemed to have consented to take a chemical test to determine the alcohol concentration, or a blood test to determine the drug or controlled dangerous substance content of the person. The chemical test shall be at no cost to you. A test of blood shall be administered if the breath test equipment is unavailable, a test is required to determine

izer test. The officer then asked Atterbeary to sign the consent provision on the DR–15 Form acknowledging his willingness to submit to the test. At that point, Atterbeary stated that he did not understand the DR–15 Form and wanted to read it for himself. Officer Mondini gave the form to Atterbeary and then left the room for several minutes. After Officer Mondini returned, Atterbeary informed the officer that he wished to speak to an attorney. When Officer Mondini asked Atterbeary for the name and number of the attorney, Atterbeary stated that he did not have one at the moment. Officer Mondini stated that he asked "him again to sign [the form] and he refused to sign it, which to me he refused to take the breath test." Officer Mondini then asked Atterbeary several routine questions, such as his date of birth and social security number, as part of the officer's completion of the DR–15A Form.[2] Atterbeary responded to each question by stating that he wanted to speak to an attorney. In response to each of the unanswered questions on the DR–15A Form, Officer Mondini filled in the word "refused."[3]

---

the drug or controlled dangerous substance content, or if your injuries require medical treatment. The results of such test or a refusal of such test may be admissible as evidence in any criminal prosecution.

\* \* \*

You have the right to refuse to submit to the test. If you refuse: The Motor Vehicle Administration (MVA) will be notified of your chemical test refusal; your Maryland (MD) driver's license shall be confiscated; an Order of Suspension issued, and if eligible, a temporary license issued, valid for 45 days. An Administrative suspension shall be imposed by the MVA against your MD driver's license or driving privilege if you are a non-resident. The suspension shall be 120 days for a first offense and 1 year for a second or subsequent offense. You will be ineligible for modification of the suspension or issuance of a restrictive license; except in certain circumstances, a test refusal suspension may be modified and a restrictive license issued, if you agree to participate in the Ignition Interlock Program for at least 1 year.

2. The DR–15A Form contains general factual information about the suspected drunk driver and the incident giving rise to the arrest.

3. Officer Mondini also stated that Atterbeary refused to sign a provision contained on the "Officer's Certification and Order of Suspension"

On the form, Officer Mondini had initially checked the box which stated that Atterbeary agreed to submit to an alcohol concentration test, but then crossed it out and marked the refusal box instead. No attempt was ever made to administer the breathalyzer test to Atterbeary. Officer Mondini issued a citation to Atterbeary for driving while intoxicated, called him a cab and released him.

Atterbeary requested and hearings were held before an Administrative Law Judge (ALJ), on July 26 and October 24, 2000.[4] At the hearings, Atterbeary objected to entering Officer Mondini's certification in evidence, because he asserted that the certification did not adequately describe the location of the offense other than to state that it took place in Montgomery County. He argued, therefore, that the MVA had failed to make a *prima facie* showing that Atterbeary was driving or attempting to drive on a public highway or private property used by the public in general. Throughout his testimony, Atterbeary also maintained that he never refused to sign the form or refused to take a breathalyzer test.

In his findings of fact, the ALJ stated:

Licensee asserts that road where he was approached by officer is a private road. I disagree—evidence by officer and by photo is that it is a public road used by the public in general. Licensee asked for an attorney. When asked for name & phone number he said he did not have one at the moment. I conclude Licensee did not have an attorney to call. Thereafter licensee kept answering he wanted to talk with an attorney to all questions. I conclude therefore he refused to take the test.

form which would have permitted Atterbeary to have a temporary license for either forty-five days or until completion of an administrative hearing on the issue, whichever occurs first. Atterbeary maintained that Officer Mondini never asked him to sign such a provision.

**4.** At the conclusion of the initial hearing on July 26, 2000, the ALJ decided to continue the proceedings and call Officer Mondini to take additional testimony. The subsequent hearing was not held until October 24, 2000.

He concluded that Officer Mondini had a reasonable basis pursuant to Section 16–205.1 of the Maryland Transportation Article to believe that Atterbeary was driving or attempting to drive while intoxicated or under the influence of alcohol, and that at the time of the incident, Atterbeary was located on a highway or private property which was used generally by the public.

Atterbeary filed a Petition for Judicial Review of the ALJ's decision in the Circuit Court for Howard County[5] pursuant to Maryland Code (1984, 1999 Repl.Vol.), Section 10–222 of the State Government Article. The Circuit Court found that there was substantial evidence to support the ALJ's finding that Atterbeary was driving or attempting to drive while intoxicated on a public road. Nevertheless, the Circuit Court concluded that Officer Mondini had acted in haste in determining that Atterbeary had refused the breathalyzer test:

With regard, however, to the reasonable opportunity to contact an attorney, I think Officer Mondini, in plain English, and no pun intended, jumped the gun. I think the evidence—there is no evidence in the transcript that says, look, we need to get a breathalyzer operator in here. We need to have x-amount of minutes in order to start up the machine and so forth. There is no question that an individual can thwart or attempt to thwart the giving of the intoximeter test or other breath test or test by blood, by pushing the two-hour limit. But there is no evidence of that here.

In other words, there is no testimony that I found in the record that where Officer Mondini said, look, we went back to the Silver Spring station, but I would have, at that hour of the morning, I would have had to call in an intoximeter

**5.** Although the incidents at issue in this matter occurred in Montgomery County, the provision governing judicial review states, "[u]nless otherwise required by statute, a petition for judicial review shall be filed with the circuit court for the county where any party resides or has a principal place of business." Md.Code (1984, 1999 Repl.Vol.), § 10–222(c) of the State Gov't. Art. Atterbeary met the conditions of the statute in order to file in Howard County.

person, and I told the defendant that that's going to take 22 minutes, approximately, and it's going to take x-amount of minutes to start up the machine, et cetera, et cetera. There is nothing in there. So when you take a look at the time of arrest, and the time that the officer determined a refusal, it was just too quick.

And, therefore, the Court, while it agrees that the State has no obligation to provide information specific to an arrestee of a name, or address, or phone number of an attorney, basically, in my opinion, Officer Mondini should have said, you know, Mr. Atterbeary, here's the phone, call whoever you want. And if Mr. Atterbeary could not get in touch with an attorney, the officer should have said, Mr. Atterbeary, I need to have your election by X and X time. I have to take the test within the two hours. And if you don't tell me by such a[nd] such a time, that's going to thwart that, and I have to then count that as [a] refusal. Basically, Officer Mondini just went too far—too fast, I should say. It may have been the same outcome, but I don't know that. So on that issue it's reversed.

Accordingly, on June 21, 2000, the Circuit Court entered an order reversing the ALJ's decision to suspend Atterbeary's license, and remanded the matter to the MVA for adjustment in compliance with the order.

MVA filed a petition for writ of certiorari and Atterbeary filed a conditional cross-petition for writ of certiorari. We granted both petitions, *Motor Vehicle Admin. v. Atterbeary,* 365 Md. 472, 781 A.2d 778 (2001) in order to consider the following questions, which we have rephrased:

1. Where a suspected drunk driver orally indicates his willingness to submit to a test of blood alcohol concentration under Section 16–205.1 of the Maryland Transportation Article, and then repeatedly requests to speak with an attorney prior to signing a form consenting to such a test, does his subsequent conduct vitiate his earlier consent?

2. Was an occupant of a vehicle in actual physical control of a vehicle constituting driving or attempting to drive under Section 16–205.1 where the occupant was found awake, behind the wheel of the car with the engine running and parked along the side of a public road when the police responded to the scene?

3. Does a police officer have "reasonable grounds" under Section 16–205.1 to forcibly investigate the condition of a motorist who is "slumped over the wheel" of a parked vehicle?

Based on our responses to the first two questions presented for our review, we need not consider the third issue.

## II. Discussion

### A. Standard of Review

■■■ Section 10–222 of the State Government Article of the Maryland Code, permits the following actions upon judicial review of the administrative agency's decision:

(1) remand the case for further proceedings;

(2) affirm the final decision; or

(3) reverse or modify the decision if any substantial right of the petitioner may have been prejudiced because a finding, conclusion, or decision:

 (i) is unconstitutional;

 (ii) exceeds the statutory authority or jurisdiction of the final decision-maker;

 (iii) results from an unlawful procedure;

 (iv) is affected by any other error of law;

 (v) is unsupported by competent, material, and substantial evidence in light of the entire record as submitted; or

 (vi) is arbitrary or capricious.

Md.Code (1984, 1999 Repl.Vol.), § 10–222(h) of the State Gov't. Art. Upon judicial review, the Circuit Court is limited to determining whether there was substantial evidence on the

record as a whole to support the agency's findings of fact and whether the agency's conclusions of law were correct. *See Board of Physician Quality Assurance v. Banks,* 354 Md. 59, 67–68, 729 A.2d 376, 380 (1999)(quoting *United Parcel Service, Inc. v. People's Counsel for Baltimore County,* 336 Md. 569, 577, 650 A.2d 226, 230 (1994)). In reviewing the administrative agency's decision, we apply the same statutory standards as the Circuit Court. *See Maryland Div. of Labor and Ind. v. Triangle Gen. Contractors, Inc.,* 366 Md. 407, 416, 784 A.2d 534, 539 (2001)(quoting *Gigeous v. E. Correctional Inst.,* 363 Md. 481, 495, 769 A.2d 912, 921 (2001)).

### B. What Constitutes A Refusal

We now turn our attention to the merits of MVA's question of what constitutes a refusal to take a blood alcohol concentration test under Section 16–205.1 of the Transportation Article. While the Circuit Court emphasized the time constraints of the testing procedure in determining whether a refusal occurred, we will decide the issue based upon what constitutes a refusal to take the test, which, in this case did not occur.

Section 16–205.1(a)(2) sets forth the general testing policy applicable to individuals who are suspected of driving or attempting to drive while intoxicated:

Any person who drives or attempts to drive a motor vehicle on a highway or on any private property that is used by the public in general in this State is deemed to have consented, subject to the provisions of §§ 10–302 through 10–309, inclusive, of the Courts and Judicial Proceedings Article, to take a test if the person should be detained on suspicion of driving or attempting to drive while intoxicated, while under the influence of alcohol, while so far under the influence of any drug, any combination of drugs, or a combination of one or more drugs and alcohol that the person could not drive a vehicle safely, while under the influence of a controlled dangerous substance, in violation of an alcohol restriction, or in violation of § 16–813 of this title.

Md.Code, § 16–205.1(a)(2) of the Transp. Art. (1977, 1999 Repl.Vol.).[6]

Section 10–303(a) of the Courts and Judicial Proceedings Article imposes time limitations on obtaining blood alcohol concentration test results from suspected drunk drivers:

(a) *Alcohol concentration.*—(1) A specimen of breath or 1 specimen of blood may be taken for the purpose of a test for determining alcohol concentration.

(2) For the purpose of a test for determining alcohol concentration, the specimen of breath or blood shall be taken within 2 hours after the person accused is apprehended.

"We have consistently recognized that the statutory provisions enacted to enforce the State's fight against drunken driving, namely Md.Code ... § 10–302 to –309 of the Courts and Judicial Proceedings Article and § 16–205.1 of the Transportation Article, were enacted for the protection of the public and not primarily for the protection of the accused." *Motor Vehicle Admin. v. Shrader,* 324 Md. 454, 464, 597 A.2d 939, 943 (1991); *see State v. Moon,* 291 Md. 463, 477, 436 A.2d 420, 427 (1981), *cert. denied,* 469 U.S. 1207, 105 S.Ct. 1170, 84 L.Ed.2d 321 (1985).

The DR–15 Form, which Officer Mondini read to Atterbeary and which Atterbeary later read for himself, advises individuals suspected of driving while intoxicated of the consequences of refusing to submit to testing for blood alcohol concentration. There is an automatic 120–day suspension for a test

---

6. Section 16–813, which applies to individuals who hold licenses to operate commercial vehicles, provides:

(a) *Driving, operating, etc., of vehicle prohibited.*—An individual may not drive, operate, or be in physical control of a commercial motor vehicle while the individual has any alcohol concentration in the individual's blood or breath.

(b) *Refusal to take chemical test.*—A person who drives, operates, or is in physical control of a commercial motor vehicle while having alcohol in the person's system or who, subject to § 16–205.1 of this title, refuses to take a chemical test to determine the alcohol concentration, shall be placed out-of-service for the 24–hour period immediately following the time the police officer or employer detects alcohol in the driver's blood or breath.

refusal. *See* Md.Code § 16–205.1(b) of the Transp. Art. If an individual submits to the test and the result is an alcohol concentration in excess of the statutory limit, the suspension for a first offense is forty-five days, or ninety days for a second or subsequent offense.[7] *See id.* The language of the statute, which allows suspects to withdraw initial refusals to take the test, reflects the legislative policy in favor of obtaining test results:

(g) *Withdrawal of initial refusal to take test; subsequent consent.*—(1) An initial refusal to take a test that is withdrawn as provided in this subsection is not a refusal to take a test for the purposes of this section.

(2) A person who initially refuses to take a test may withdraw the initial refusal and subsequently consent to take the test if the subsequent consent:

(i) Is unequivocal;

(ii) Does not substantially interfere with the timely and efficacious administration of the test; and

(iii) Is given by the person:

1. Before the delay in testing would materially affect the outcome of the test; and

2. A. For the purpose of a test for determining alcohol concentration, within 2 hours of the person's apprehension; . . .

Md.Code, § 16–205.1(g) of the Transp. Art.; *see Embrey v. Motor Vehicle Admin.,* 339 Md. 691, 697, 664 A.2d 911, 914 (1995)(quoting *Motor Vehicle Admin. v. Vermeersch,* 331 Md. 188, 194, 626 A.2d 972, 975 (1993)). A person, nevertheless,

---

7. The threshold blood alcohol level for suspension of a drivers license was reduced from 0.10 to 0.08 by Chapters 4 and 5 of the 2001 Maryland Laws. *See* Md.Code (1977, 1999 Repl.Vol., 2001 Supp.) § 16–205.1(b) of the Transp. Art. We refer to the older version of the law as explicated in the DR–15 Form provided to Atterbeary because the revised version did not take effect until September 30, 2001, and the General Assembly clearly stated that the alterations were to be construed only prospectively. *See* 2001 Md. Laws, ch. 4 and 5, § 2.

cannot be compelled to submit to a chemical test for intoxication. *See* Md.Code, § 10–309, Cts. & Jud. Proc. Art.[8]

█ Although Section 16–205.1 does not specifically provide that an individual suspected of or arrested for drunk driving has a right to confer with counsel prior to deciding whether to submit to a breathalyzer test, we have held:

> the due process clause of the Fourteenth Amendment, as well as Article 24 of the Maryland Declaration of Rights, requires that a person under detention for drunk driving must, on request, be permitted a reasonable opportunity to communicate with counsel before submitting to a chemical sobriety test, as long as such attempted communication will not substantially interfere with the timely and efficacious administration of the testing process.

*Sites v. State,* 300 Md. 702, 717–18, 481 A.2d 192, 200 (1984). The limited right to confer or attempt to confer with counsel prior to deciding whether to submit to a breathalyzer test as announced in *Sites* was not meant to give suspected drunk drivers the ability to postpone administration of the test in order to achieve more favorable results. *See Sites,* 300 Md. at 714, 481 A.2d at 198 (quoting *People v. Gursey,* 22 N.Y.2d 224, 292 N.Y.S.2d 416, 239 N.E.2d 351, 353 (1968))("The privilege of consulting with counsel concerning the exercise of legal rights, should not, however, extend so far as to palpably impair or nullify the statutory procedure requiring drivers to choose between taking the test or losing their licenses."). Rather, we explicitly stated:

---

8. There are exceptions to the rule against compulsion which apply in limited circumstances. A person will be compelled to take the test when the individual was involved in a motor vehicle accident causing death or life threatening injuries to another and the police officer has reasonable grounds to believe that the person was driving or attempted to drive while intoxicated. *See* Md.Code, § 16–205.1(c) of the Transp. Art. In addition, Section 10–305(c) of the Courts and Judicial Proceedings Article provides, "[a]ny person who is dead, unconscious, or otherwise in a condition rendering him incapable of test refusal shall be deemed not to have withdrawn consent," and thus may be compelled to submit to a test under Section 16–205.1(d) of the Transportation Article.

> if counsel cannot be contacted within a reasonable time, the arrestee may be required to make a decision regarding testing without the advice of counsel. We emphasize that in no event can the right to communicate with counsel be permitted to delay the test for an unreasonable time since, to be sure, that would impair the accuracy of the test and defeat the purpose of the statute.

*Id.* at 718, 481 A.2d at 200. Thus, our decision in *Sites* only recognized a due process right so that an individual who requests to consult with counsel for the purpose of receiving advice as to whether to submit to a breathalyzer test, must be permitted a reasonable opportunity to do so. *See id.* at 712, 481 A.2d at 197 (explaining that prior to being formally charged, there can be no attachment of the Sixth Amendment right to counsel)(citing *Webster v. State*, 299 Md. 581, 474 A.2d 1305 (1984)); *see also Darrikhuma v. State*, 81 Md.App. 560, 571, 568 A.2d 1150, 1155 (1990)(explaining that under the holdings of *Sites* and *Brosan v. Cochran, infra*, 307 Md. 662, 516 A.2d 970 (1986), "a person arrested for drunk driving has a right to consult with an attorney prior to formulating a decision on whether or not to take a breathalyzer test—*if that person makes such a request to consult with an attorney* ")(emphasis in original). Accordingly, "[w]e recognized in *Sites* neither a right of counsel in the Fifth nor Sixth Amendment sense, but rather a deprivation of the right of due process by the unnecessary denial of a specific request for counsel." *McAvoy* 314 Md. at 519, 551 A.2d at 880.

■ In order to protect the licensee's due process right, the right to consult with counsel prior to deciding whether to submit to a breathalyzer test must be meaningful and comport with traditional notions of essential fairness. While there still exists an unrelenting desire "to rid our highways of the drunk driver menace," *Willis v. State*, 302 Md. 363, 370, 488 A.2d 171, 175 (1985), a "default" refusal to submit to the test cannot be permitted to stand on these facts.

■ There is no bright line rule which will effectively ensure that the due process right to communicate with counsel

prior to submitting to a breathalyzer test as recognized in *Sites* is heeded in all circumstances without risking being overbroad or under-inclusive. Instead, determining whether an individual has been denied his or her due process right to communicate with counsel prior to submitting to a breathalyzer test requires a case-by-case analysis of the facts and circumstances involved. *See Sites*, 300 Md. at 718, 481 A.2d at 200.

■ We have provided some guidance as to what types of communication would be considered an exercise of the *Sites* due process right to communicate with counsel. For example, in *Brosan v. Cochran*, 307 Md. 662, 516 A.2d 970 (1986), we held that an individual who timely requests to consult with an attorney and have the attorney administer an independent breathalyzer test may do so in order to make an informed decision as to whether to submit to the test administered by the police. *Brosan*, 307 Md. at 673–74, 516 A.2d at 976. We further commented that the *Sites* due process right may encompass telephonic contact and / or face-to-face consultation. *See id.* at 669, 516 A.2d at 974. The due process right, however, does not confer upon suspects the right to be informed that they can have a preliminary test performed by a non-law enforcement person prior to deciding whether to submit to the official test administered by the police. *See Darrikhuma*, 81 Md.App. at 572–74, 568 A.2d at 1155–57. Nevertheless, we note that in requesting to confer with counsel, a suspected drunk driver may seek advice upon any aspect of the DR–15 Form, which in addition to advising individuals of the consequences of a test refusal, sets forth the sanctions for having a blood alcohol concentration in excess of the statutory limit, explains the administrative review process, and advises of the potential disqualification of a suspected drunk driver's Commercial Driver's License for a test refusal.

■ In our analysis of the case at bar, the determinative question is whether Officer Mondini's conclusion that Atterbeary's unwillingness to sign the form and his repeated requests for an attorney constituted a refusal to submit to the

test, is correct. At the hearing before the ALJ, Officer Mondini testified that Atterbeary initially said he would take the breathalyzer test. Atterbeary, however, thereafter asked to speak to an attorney after he read the DR–15 Form. When the officer asked for Atterbeary's attorney's name and telephone number, Atterbeary stated he did not have an attorney at the moment. Officer Mondini continued to ask Atterbeary to sign the form, and each time Atterbeary asked to speak with a lawyer. As indicated in the record, approximately twenty minutes elapsed from the time Atterbeary orally stated that he would submit to the breathalyzer test to the point in time where Officer Mondini determined that Atterbeary's refusal to sign the form constituted a refusal to take the test. Atterbeary challenges this determination-he states that he never refused to take the breathalyzer test.

As in every case, the MVA bears the burden of proving that Atterbeary refused to take the breathalyzer test through his conduct. *See Borbon v. Motor Vehicle Admin.*, 345 Md. 267, 280, 691 A.2d 1328, 1334 (1997). A refusal of a breathalyzer or other chemical analysis test "is complete at the moment it is communicated to the officer." *Motor Vehicle Admin. v. Gaddy*, 335 Md. 342, 348, 643 A.2d 442, 445 (1994).

In the present case, the officer equated Atterbeary's unwillingness to sign the form with a refusal to take the test. Atterbeary's decision to refrain from signing the form before having the opportunity to consult with an attorney, however, did not change the fact that he had orally agreed to submit to the test before reading the DR–15 Form for himself, and consent is implied in the statute. The statute itself contains no language imposing an express written consent requirement. There is absolutely no language reflecting any intent on the part of the Legislature to mandate that a driver must signify consent on a written form. Rather, individuals who drive in Maryland are "deemed to have consented . . . to take a test if the person should be detained on suspicion of driving or attempting to drive" under the influence of drugs or alcohol. Md.Code, § 16–205.1(a)(2) of the Transp. Art.

■ The MVA advocates that an individual's consent or refusal to submit to the breathalyzer test must be reduced to writing for the purpose of providing evidentiary proof. Although a written statement may serve as strong evidence of the drunk driving suspect's willingness or unwillingness to submit to the test and potentially makes easier the MVA's ability to make a *prima facie* case before an ALJ, we decline to impose such a requirement. In the context of a valid waiver of the privilege against self-incrimination in custodial interrogations, which are subject to closer scrutiny than the present case because of constitutional mandate, the Supreme Court has clearly stated that the *Miranda* decision did not hold that "an express statement is indispensable to a finding of waiver." *North Carolina v. Butler*, 441 U.S. 369, 373, 99 S.Ct. 1755, 1757, 60 L.Ed.2d 286, 292 (1979)("An express written or oral statement of waiver of the right to remain silent or of the right to counsel is usually strong proof of the validity of that waiver, but is not inevitably either necessary or sufficient to establish waiver.") Thus, a person may waive his or her Fifth Amendment privilege against self-incrimination after orally receiving his or her *Miranda* warnings and orally indicating a willingness to make a statement. *See In re Fletcher*, 251 Md. 520, 526–29, 248 A.2d 364, 368–69 (1968)(finding a knowing and intelligent waiver where defendant orally received his *Miranda* warnings and orally waived his privilege against self-incrimination and his right to retain appointed counsel); *State v. Purvey*, 129 Md.App. 1, 17–19, 740 A.2d 54, 63–64 (1999)(finding that for a valid waiver of the privilege against self-incrimination it is unnecessary to reduce the waiver of rights and subsequent statement to writing).

Both parties agree that Atterbeary orally agreed to submit to the breathalyzer test. Once Atterbeary requested to read the DR–15 Form and stated that he wanted to consult with counsel, Officer Mondini *never* asked Atterbeary if he still wished to take the test; the officer only asked Atterbeary to sign the form. Similarly, no attempts were made to administer the test to Atterbeary. Based on this record, it would appear that any refusal to obtain breathalyzer test results was

due to the officer's haste in concluding for himself that Atterbeary had withdrawn his initial consent and now refused to submit based on his invocation of the *Sites* right to counsel, rather than from either an express or implied refusal on the part of Atterbeary.

■ In rendering his decision, the ALJ determined that Atterbeary had refused to take the test because he asked for an attorney in response to all questions put to him:

> Licensee asked for an attorney. When asked for name & phone number he said he did not have one at the moment. I conclude Licensee did not have an attorney to call. Thereafter licensee kept answering he wanted to talk with an attorney to all questions. I conclude therefore he refused to take the test.

In so doing, the ALJ failed to acknowledge that Atterbeary had declared that he would submit to the test. Instead, the ALJ concluded that based on Atterbeary's repeated requests to speak with an attorney that he thereby refused to take the breathalyzer test. Logical reasoning simply cannot be strained in order to support such a leap, for when an individual chooses to exercise his or her right to contact counsel under *Sites,* the decision to do so is, at that point, neither necessarily a conditional nor a *per se* refusal to submit to the breathalyzer test. As noted earlier at supra page 497, the DR–15 Form addresses many matters in addition to the consent to take the test. Atterbeary's request to speak to an attorney, without more, may not logically or exclusively be construed to relate only to the testing reference in the form advisement and, thus, be interpreted as an implied refusal of consent to be tested or a withdrawal of consent. The exercise of the *Sites* right may be treated separately and distinctly from the assessment of whether an individual has refused to submit to a breathalyzer test.[9] Therefore, on the facts and circumstances of this case,

---

9. In its decision below, the Circuit Court emphasized the importance of making meaningful an individual's exercise of the *Sites* right. Although mindful that suspected drunk drivers may "thwart or attempt to thwart the giving of the intoximeter test ... by pushing the two-hour limit,"

there was insufficient evidence to conclude that Atterbeary refused to submit to the breathalyzer test.

### C. Driving or Attempting to Drive Under Section 16–205.1(a)(2).

Respondent's primary contention in his cross-appeal is that he was not driving or attempting to drive as set forth in Section 16–205.1(a)(2) at the time Officer Mondini responded to the fire and rescue call at 3121 Automotive Boulevard because he was legally parked on the side of the road and not moving the vehicle. On this basis, he asserts that the implied consent provision for blood alcohol content testing was not triggered by this incident.[10] We disagree with respondent's contention, however, because Officer Mondini responded to the scene and found respondent sitting awake in the driver's seat with the keys in the ignition and the car engine running.

The statute defines the term "drive" as used throughout Maryland's vehicle law as meaning "to drive, operate, move, or be in *actual physical control of a vehicle,* including the exercise of control over or the steering of a vehicle being towed by a motor vehicle." Md.Code, § 11–114 of the Transp. Art. (emphasis added). Respondent urges that our decision concerning what constitutes being in "actual physical control

---

the court found that depending on the facts and circumstances of the case, an officer may have to take steps to help facilitate the individual's expressed desire to contact an attorney. For example, the court recognized that while "the State has no obligation to provide information specific to an arrestee of a name, or address, or phone number of an attorney," the officer should have made available to Atterbeary a phone book and a phone to use to place a call to whomever could help him.

**10.** As a tangential issue, respondent argues that Automotive Boulevard is not a highway or "private property that is used by the public in general" on behalf of his assertion that the implied consent provision of Section 16–205.1(a)(2) was not triggered by his conduct. The record before the ALJ disclosed that Automotive Boulevard originates at Briggs Chaney Road, and serves as a common road running between multiple automobile dealerships, a carwash, and one or more automobile servicing centers located along the thoroughfare. Thus, it was proper to conclude that respondent's presence on Automotive Boulevard satisfied the location requirements set forth in Section 16–205.1(a)(2).

of a vehicle" as set forth in *Atkinson v. State*, 331 Md. 199, 627 A.2d 1019 (1993) controls our decision in this case and mandates the conclusion that Atterbeary was not driving or attempting to drive his vehicle at the time of his arrest.

The facts of the case *sub judice* are distinguishable from our decision in *Atkinson*. In *Atkinson*, the appellant was parked lawfully on the side of the road, sleeping, with the keys in the ignition but the engine not running. *Id.* at 202, 627 A.2d at 1020. Based on those facts, we held that Atkinson was not in "actual physical control" over the vehicle at the time of his arrest, and thus, could not be driving or attempting to drive his vehicle while intoxicated. *Id.* at 215, 627 A.2d at 1027 ("We believe that the General Assembly, particularly by including the word 'actual' in the term 'actual physical control,' meant something more than merely sleeping in a legally parked vehicle with the ignition off."). We provided the following rationale for our holding:

Neither the statute's purpose nor its plain language supports the result that intoxicated persons sitting in their vehicles while in possession of their ignition keys would, regardless of other circumstances, always be subject to criminal penalty.... Although the definition of "driving" is indisputably broadened by the inclusion in § 11–114 of the words "operate, move, or be in actual physical control," the statute nonetheless relates to *driving* while intoxicated. Statutory language, whether plain or not, must be read in its context.... In this instance, the context is the legislature's desire to prevent intoxicated individuals from posing a serious public risk with their vehicles. We do not believe the legislature meant to forbid those intoxicated individuals who emerge from a tavern at closing time on a cold winter night from merely entering their vehicles to seek shelter while they sleep off the effects of alcohol. As long as such individuals do not act to endanger themselves or others, they do not present the hazard to which the drunk driving statute is directed. Thus, rather than assume that a hazard exists based solely upon the defendant's presence in the

vehicle, we believe courts must assess potential danger based upon the circumstances of each case.

*Id.* at 212–13, 627 A.2d at 1025–26 (internal citations omitted)(emphasis in original).

 In reaching our holding in *Atkinson*, we set forth six factors which must always be taken into account when assessing the potential danger presented by the various circumstances of each case:

1) whether or not the vehicle's engine is running, or the ignition on;

2) where and in what position the person is found in the vehicle;

3) whether the person is awake or asleep;

4) where the vehicle's ignition key is located;

5) whether the vehicle's headlights are on;

6) whether the vehicle is located in the roadway or is legally parked.

*Id.* at 216, 627 A.2d at 1027. No one factor will be dispositive of whether an individual was in "actual physical control" of the vehicle. *Id.* at 216, 627 A.2d at 1028.

Thus, we review the ALJ's decision in light of the six factors for assessing whether an individual was in "actual physical control" as annunciated in *Atkinson*. The record before the ALJ demonstrated that at the time Officer Mondini arrived on the scene, Atterbeary was not simply passively sitting in his car sleeping off his intoxication outside of a tavern. It is undisputed that upon the officer's arrival, respondent was awake and seated in his parked car on Automotive Boulevard outside of a car dealership with the engine running. Officer Mondini acknowledged that the car had power windows and that he had been informed by the fire and rescue personnel that they had asked Atterbeary to open the window. The record does not indicate whether the engine of Atterbeary's vehicle was running when fire and rescue responded to the scene, nor did Atterbeary state whether he had only started

the ignition at the request of the fire and rescue personnel for the sole purpose of lowering his window.

The circumstances of the present case are also distinguishable from the hypothetical scenarios posed in *Atkinson* where an individual leaves a tavern intoxicated and proceeds to sleep off the intoxication in a legally parked car in the parking lot of the drinking establishment. *See Atkinson,* 331 Md. at 212, 627 A.2d at 1025–26. Rather, we must consider "what the evidence showed [Atterbeary] was doing or had done, and whether these actions posed an imminent threat to the public." *See id.* at 216–17, 627 A.2d at 1028.

In the present case, because Atterbeary was sitting in the driver's seat, awake, and with the engine running, he was capable of attempting to drive his vehicle at the time the officers arrived at Automotive Boulevard. Atterbeary was not taking shelter passively in his car while sleeping off the effects of his inebriation. To the contrary, the facts of this case provide strong indicia that Atterbeary posed an imminent threat to public safety. We conclude, therefore, that the record provided a sufficient basis for the ALJ to determine that Officer Mondini had a reasonable articulable suspicion that Atterbeary had been in "actual physical control" of the vehicle upon his arrival at the scene as used in the statutory definition of the term "to drive," thereby triggering the implied consent testing provision of Section 16–205.1(a)(2). *See Gore v. State,* 74 Md.App. 143, 149, 536 A.2d 735, 738 (1988)(holding that appellant was driving where the evidence showed that although the driver was not moving the vehicle at the time of the officer's arrival, "the car key was in the ignition in the 'on' position, with the alternator/battery light lit; that the gear selector was in the "drive" position; and that the engine was warm to the touch").

For the foregoing reasons, we affirm the decision of the Circuit Court for Howard County.

***JUDGMENT OF THE CIRCUIT COURT FOR HOWARD COUNTY AFFIRMED. COSTS TO BE PAID BY PETITIONER.***