941 A.2d 1067

MOTOR VEHICLE ADMINISTRATION

v.

Lianne Marie DELAWTER.

No. 63, Sept. Term, 2007.

Court of Appeals of Maryland.

Feb. 13, 2008.

Leight D. Collins, Assistant Attorney General (Douglas F. Gansler, Attorney General of Maryland of Glen Burnie, MD), on brief, for Petitioner.

Norman C. Usiak (Law Offices of Norman C. Usiak, P.C. of Frederick, MD), on brief, for Respondent

Argued Before BELL, C.J., and RAKER, HARRELL, BATTAGLIA, GREENE, ALAN M. WILNER (Retired, specially assigned) and DALE R. CATHELL (Retired, specially assigned), JJ.

BATTAGLIA, J.

Following a hearing[1] before the Motor Vehicle Administration ("MVA") on November 8, 2006, Administrative Law Judge C. Hooker Davis reduced the duration of the suspension of the

---

1. Respondent, Lianne Marie Delawter, requested the hearing pursuant to Section 16–205.1(f) of the Transportation Article, Maryland Code (1977, 2006 Repl.Vol.); the version of the statute applicable in this case stated in part:

   (f) *Notice and hearing on refusal to take test; suspension of license or privilege to drive; disqualification from driving commercial vehicles.*— (1) Subject to the provisions of this subsection, at the time of, or within 30 days from the date of, the issuance of an order of suspension, a person may submit a written request for a hearing before an officer of the Administration if:

   (i) The person is arrested for driving or attempting to drive a motor vehicle while under the influence of alcohol, while impaired by alcohol, while so far impaired by any drug, any combination of drugs, or a combination of one or more drugs and alcohol that the person could not drive a vehicle safely, while impaired by a controlled dangerous substance, in violation of an alcohol restriction, or in violation of § 16–813 of this title; and

   (ii) 1. There is an alcohol concentration of 0.08 or more at the time of testing; or

driver's license of Respondent, Lianne Marie Delawter, to twenty-five days and referred Ms. Delawter to the Medical Advisory Board ("MAB" or the "Board")[2] for alcohol evaluation. After a judicial review hearing, the Circuit Court for Frederick County affirmed the twenty-five day suspension, but reversed the referral to the MAB because Ms. Delawter did not receive notice on the DR–15 Advice of Rights form "that by exercising her right to a hearing she was facing a possible referral to the MAB." Petitioner, the MVA, now presents us with the following question for review:

---

2. The person refused to take a test.

\* \* \*

(7)(i) At a hearing under this section, the person has the rights described in § 12–206 of this article, but at the hearing the only issues shall be:
1. Whether the police officer who stops or detains a person had reasonable grounds to believe the person was driving or attempting to drive while under the influence of alcohol, while impaired by alcohol, while so far impaired by any drug, any combination of drugs, or a combination of one or more drugs and alcohol that the person could not drive a vehicle safely, while impaired by a controlled dangerous substance, in violation of an alcohol restriction, or in violation of § 16–813 of this title;
2. Whether there was evidence of the use by the person of alcohol, any drug, any combination of drugs, a combination of one or more drugs and alcohol, or a controlled dangerous substance;
3. Whether the police officer requested a test after the person was fully advised of the administrative sanctions that shall be imposed, including the fact that a person who refuses to take the test is ineligible for modification of a suspension or issuance of a restrictive license under subsection (n)(1) and (2) of this section;
4. Whether the person refused to take the test;
5. Whether the person drove or attempted to drive a motor vehicle while having an alcohol concentration of 0.08 or more at the time of testing;
6. If the hearing involves disqualification of a commercial driver's license, whether the person was operating a commercial motor vehicle or held a commercial driver's license.
(ii) The sworn statement of the police officer and of the test technician or analyst shall be prima facie evidence of a test refusal or a test resulting in an alcohol concentration of 0.08 or more at the time of testing.

2. The Medical Advisory Board is a group comprised of physicians and optometrists appointed by the MVA in order investigate the physical and mental condition of individuals who seek to drive. *See* Md.Code (1977, 2006 Repl.Vol.), § 16–118 of the Transportation Article.

In the course of an administrative hearing under Md.Code Ann., Transp. § 16–205.1(f)(7), where the evidence established that a driver had been cited for drunk driving on multiple occasions, including a single-car crash, was the ALJ precluded from requesting that the MVA review the driver's medical fitness to drive, because the driver was not advised of the potential "MAB referral" in the DR–15 Advice of Rights form?

*MVA v. Delawter,* 401 Md. 172, 931 A.2d 1095 (2007). We shall reverse the Circuit Court and hold that notice of a potential MAB referral need not be included in the DR–15 Advice of Rights form.

## I. Introduction

On May 6, 2006, at approximately 2:30 in the morning, Ms. Delawter was involved in a single motor vehicle crash on Potomac and Main Streets in Boonsboro, Washington County, Maryland. Deputy First Class J. Garrett Mills of the Washington County Sheriff's Office arrived at the scene, determined that Ms. Delawter was the driver of the vehicle, and upon approaching her, detected a strong odor of alcohol about her person and noticed that her eyes appeared red and glassy. Deputy Sheriff Mills arrested Ms. Delawter for driving under the influence and provided her with a DR–15 Advice of Rights form,[3] which advised her of the potential administrative sanc-

---

**3.** In *Motor Vehicle Administration v. Illiano,* 390 Md. 265, 269 n. 7, 888 A.2d 329, 332–33 n. 7 (2005), we iterated that the "DR–15 Form, sometimes referred to as The Advice of Rights and Administrative Penalties for Refusal to Submit to a Chemical Test statement, is derived from Section 16–205.1(b) of the Maryland Transportation Article." *See also MVA v. Atterbeary,* 368 Md. 480, 485 n. 1, 796 A.2d 75, 78 n. 1 (2002). At the time of the events in this case, the DR–15 included the following admonitions:

> **Submission to the test. If your test results in an alcohol concentration of 0.08 or more:** The MVA will be notified of your test results; your Maryland driver's license shall be confiscated; an Order of Suspension issued; and if eligible, a temporary license issued valid for 45 days. An Administrative suspension shall be imposed by the MVA against your Maryland driver's license or privilege. The suspension shall be 45 days for a first offense and 90 days for a second

or subsequent offense. The suspension may be modified at a hearing in certain circumstances.

**You have the right to refuse to submit to the test. If you refuse:** The MVA will be notified of your test refusal; your Maryland driver's license shall be confiscated; an Order of Suspension issued; and if eligible, a temporary license issued valid for 45 days. An Administrative suspension shall be imposed by the MVA against your Maryland driver's license or privilege. The suspension shall be 120 days for a first offense and 1 year for a second or subsequent offense. You will be ineligible for modification of the suspension or issuance of a restrictive license, except in certain circumstances, a test refusal suspension may be modified at a hearing if you agree to participate in the Ignition Interlock Program for at least 1 year. An additional criminal penalty of not more than $500 or imprisonment for not more than 2 months or both may be imposed under § 27–101(x) of the Transportation Article if you are convicted of a violation of § 21–902 of the Transportation Article and the trier of fact finds beyond a reasonable doubt that you knowingly refused to take a test arising out of the same circumstances. If you hold a commercial driver's license (CDL) when you refuse to submit to a test, your CDL or privilege shall be disqualified for one year.

**You have the right to request an Administrative hearing:** You may request an Administrative Hearing at any time within 30 days of the date of the Order of Suspension to show cause why your driver's license or privilege should not be suspended. You must request a hearing within 10 days of the date of the Order of Suspension to insure that your privilege to drive is not suspended prior to your hearing. Your request for a hearing must be made in writing. You may use the "Hearing Request" form if available. Send your request to the Office of Administrative Hearings at 11101 Gilroy Rd., Hunt Valley, MD 21031–1301. You must include a check or money order for $125.00, which is the required filing fee, made payable to the "Maryland State Treasurer." Your request for a hearing will be *invalid if submitted without the required $125.00 filing fee.*

**Violation of Restriction:** The MVA may also suspend or revoke your license upon satisfactory evidence of a violation of a license restriction.

**Offenses Occurring While Driving a Commercial Motor Vehicle:** In addition to any suspension for a test failure or refusal, if you were operating a commercial motor vehicle and your test result indicates an alcohol concentration of 0.04 or more, or you refused to submit to a test, your commercial driver's license or privilege shall be disqualified 1 year for a first offense, or 3 years for a first offense committed while transporting hazardous materials required to placarded. Your commercial driver's license or privilege shall be disqualified for life if you commit a second or subsequent offense.

**Your driver's license or privilege will be suspended on the 46th day after the date of the Order of Suspension if:** (1) You do not request a hearing within 10 days of the date of the Order of Suspension; (2) You fail to appear for a hearing; (3) At the conclusion of the hearing, a decision is rendered against you. Your request for a hearing will be invalid if submitted without the required $125.00 filing fee.

**248**

**Certification:**

**I, the undersigned police officer,** certify that I have advised the driver of the above stated Advice of Rights. This includes advising the driver of the sanctions imposed for: (1) a refusal to take a test; (2) a test resulting in an alcohol concentration of 0.08 or more; and (3) disqualification for persons holding a commercial driver's license. Read Before Signing:

**I, the undersigned driver,** acknowledge that I have been read or I have read the above stated Advice of Rights as certified by the police officer. I understand that this requested test is in addition to any preliminary tests that were taken.

The DR–15 was amended in 2007; the altered portions now provide:
**Suspension of Your Maryland Driver's License or Driving Privilege:** If you refuse to submit to the test, or submit to the test and the result indicates an alcohol concentration of 0.08 or more at the time of testing, your Maryland driver's license will be confiscated, you will be issued an Order of Suspension and, if eligible, a temporary license valid for 45 days. The following periods of suspension shall be imposed against your license or privilege to drive in Maryland:

**If your test result is an alcohol concentration of at least 0.08 but less than 0.15: The suspension will be 45 days for a first offense and 90 days for a second or subsequent offense.**

**If your test result is an alcohol concentration of 0.15 or more: The suspension will be 90 days for a first offense and 180 days for a second or subsequent offense.**

\* \* \*

**Modification of the Suspension or Issuance of a Restrictive License:**
**If your test result is an alcohol concentration of 0.08 but less than 0.15:** The suspension may be modified or a restrictive license issued at a hearing in certain circumstances.

**If you refuse a test, or take a test with a result of 0.15 or more: You will be ineligible for modification of the suspension or issuance of a restrictive license, unless you participate in the Ignition Interlock System Program under § 16–404.1 of the Maryland Vehicle Law.** This program requires the vehicle(s) you drive to be equipped with a device that prevents you from operating it if you have alcohol in your blood. At a hearing, if you request one, an administrative judge may modify a suspension by permitting you to participate in the Ignition Interlock System Program for one year, but is not required to do so. **Instead of requesting a hearing, you may elect to participate in the Ignition Interlock System Program for one year,** instead of the period of suspension, if the following conditions are met: 1) your driver's license is not currently suspended, revoked, canceled, or refused; 2) you were not charged with a moving violation arising out of the same circumstances as the Order of Suspension that involved the death of, or serious physical injury to, another person; and 3) within thirty (30) days of the date of the Order of Suspension you a) elect in writing to participate in the Ignition Interlock System Program for one year, instead of requesting a hearing, and b) surrender a valid Maryland driver's license or sign a statement certifying that the license is no longer in your possession. An ignition interlock

tions she faced. Ms. Delawter was not subjected to field sobriety tests due to her injuries, but subsequently she had a blood sample taken, which indicated an alcohol concentration of .17. Four months later, on September 5, 2006, Deputy Sheriff Mills confiscated Ms. Delawter's driver's license, served her with an order of suspension, and issued her a temporary license.

Ms. Delawter requested a hearing before an administrative law judge, who convened it on November 8, 2006. Administrative Law Judge C. Hooker Davis admitted the DR–15 Advice of Rights Form signed by Deputy Sheriff Mills and Ms. Delawter, the DR–15A Order of Suspension,[4] the MSP–33 Result of Test Alcohol Concentration Form,[5] and Ms. Delaw-

election form is located on the reverse side of the driver's copy of the Order of Suspension.

\* \* \*

**Your Driver's License or Privilege will be Suspended on the 46th Day after the Order of Suspension if:** You do not request a hearing within 10 days of the date of the Order of Suspension or, if eligible, you do not elect within 30 days of the Order of Suspension to participate in the Ignition Interlock System Program for one year instead of requesting a hearing. If you submit a valid hearing request, a suspension will not be imposed unless a decision is rendered against you, or if you fail to appear for the hearing. **Certification:** I, the Undersigned Police Officer, certify that I have advised the driver of the above stated Advice of Rights, including the sanctions imposed for: 1) a refusal to take a test; 2) a test resulting in an alcohol concentration of at least 0.08 but less than 0.15; 3) a test resulting in an alcohol concentration of 0.15 or more; and 4) disqualifications for persons holding a commercial driver's license.

4. We recently iterated in *Motor Vehicle Administration v. Shepard*, 399 Md. 241, 246 n. 2, 923 A.2d 100, 103 n. 2 (2007), that the DR–15A form, " 'Officer's Certification and Order of Suspension,' contains general factual information about the driver and the incident giving rise to a license suspension under § 16–205.1." *See also Atterbeary*, 368 Md. at 486 n. 2, 796 A.2d at 79 n. 2. Also, the DR–15A form "serves as the temporary license for a motorist whose driver's license is confiscated for failure to take the alcohol test or failing the test." *MVA v. Karwacki*, 340 Md. 271, 276, 666 A.2d 511, 513 (1995).

5. The MSP–33 form, "Notification to Defendant of Result of Test Alcohol Concentration," certifies the results of an individual's alcohol concentration. *Borbon v. MVA*, 345 Md. 267, 270, 691 A.2d 1328, 1329 (1997).

ter's driving record. Although her counsel argued that the Order of Suspension should be dismissed because of the delay between the accident and the issuance of the suspension, the ALJ disagreed. Ms. Delawter also contended that she should be granted a restricted license, arguing that she was enrolled at Mountain Manor treatment program for alcohol dependency and that she was employed in two different positions which required her to travel to various sites, which the ALJ also rejected. At the conclusion of the hearing, the ALJ determined that Deputy Sheriff Mills had reasonable grounds to believe that Ms. Delawter was driving while under the influence of or impaired by alcohol, that the Deputy believed that Ms. Delawter had consumed alcohol, that he had advised her of the administrative sanctions to be imposed and had requested that an alcohol concentration test be performed, that the test was performed, and that the test results reflected an alcohol concentration of .17. The ALJ reduced the suspension to twenty-five days and also referred Ms. Delawter to the Medical Advisory Board:

> After considering the evidence presented in this case, I find by a preponderance of the evidence the following facts. The officer who stopped or detained the Licensee had reasonable grounds to believe that the Licensee was driving or attempting to drive a motor vehicle while under the influence of or impaired by alcohol based on the following. The Licensee was the driver of a motor vehicle involved in an accident. The evidence of the use of alcohol was based on the following, a strong odor of an alcoholic beverage was on her person. The officer fully advised the Licensee of the administrative sanctions to be imposed. The officer requested that the Licensee take a test as defined in Maryland Code Annotated Transportation Section 16–205.1. The Licensee drove a motor vehicle and took the test as requested which indicated an alcohol concentration of 0.17 grams of alcohol per 100 milliliters of blood at the time of testing. The Licensee did not refuse the test. The Licensee was not driving a commercial motor vehicle. I find the Licensee did not present any evidence to refute the evidence presented

by the MVA. I further find the Licensee was not prejudiced by the Administration regarding the delay in issuing the order of suspension. The Licensee is employed by CVS # 1484 as a pharmacy technician and by a private patient as a health care provider. The Licensee drives to work sites. The Licensee is under the supervision of the Division of Parole and Probation. She attends alcohol education at Mountain Manor where she was diagnosed as alcohol dependent on June 23, '06. Based upon the foregoing, I conclude that the Licensee is subject to sanction under Section 16–205.1.

\* \* \*

The Maryland driving record reflects two prior alcohol-related driving incidents, January 10, 1989, probation before judgment granted under 21–902(a), June 16, 1992, cited DUI, convicted. . . . Licensee has not had a license suspended under Section 16–205.1 in the past five years nor has the Licensee been convicted under 21–902 in the past five years. The Licensee has presented evidence in the form of testimonial evidence as well as documentary evidence regarding the need of a license for commuting for employment and for alcohol education. While the Licensee meets the criteria for the issuance of a restricted license in view of the prior two alcohol-related driving incidents I will not issue a restricted license. However, I will modify the 45–day suspension to a suspension for a period of 25 days.

\* \* \*

Under Section 16–118(c), COMAR 11.17.03, I'm referring this matter to the Medical Advisory Board for an alcohol evaluation.

Ms. Delawter filed a Petition for Judicial Review in the Circuit Court for Frederick County where she argued that the order of suspension should be dismissed because of the delay between the accident and service of the order, that the evidence did not support the ALJ's findings and that the ALJ exceeded his authority when he referred her to the MAB. The

Circuit Court judge rejected Ms. Delawter's first two arguments and affirmed the suspension order, concluding that the ALJ's findings were supported by substantial evidence and that the delay in the service of the suspension order was not unreasonable or prejudicial. The judge reversed the referral to the MAB, however, noting that if Ms. Delawter had not requested a hearing, she would not have been referred to the Board by the ALJ and that she "was not given notice that her exercise of her right to a hearing may have subjected herself to a possible referral to the MAB":

> Petitioner further argues that under COMAR 11.17.03, the ALJ exceeded his authority by referring her to the MAB. The MVA argues that the MAB is created pursuant to TR § 16–118. The nature of a referral is to report to the MAB a person who may be unfit to drive. The MVA argues it is within the discretion of the MAB, based on the referral they receive, to take action. Additionally, the MVA states that the referral to the MAB was warranted based on two related offenses; one in 1988, and the other in 1992. Further, the MVA argues that anyone (including an officer, ALJ or private citizen) can make a referral to the MAB.
>
> However, the Assistant Attorney General candidly admitted that if Petitioner had not requested a hearing, Petitioner would not have been subjected to a possible referral to the MAB.
>
> The Advise of Rights form given to Petitioner failed to inform her that by exercising her right to a hearing she was facing a possible referral to the MAB. This additional sanction inflicted upon Petitioner did in fact prejudice her.

### CONCLUSION

For the reasons set forth herein, it is this 12th day of June, 2007, that this Court finds that there was substantial evidence before the Motor Vehicle Administration to support its findings and conclusions of the law regarding the suspension of 25 days and this Court **AFFIRMS** the MVA decision concerning the suspension. However, this Court **RE-**

**VERSES** the referral to the MAB. Petitioner was not given notice that her exercise of her right to a hearing may have subjected herself to a possible referral to the MAB.

We granted the MVA's petition for writ of certiorari. *Delawter*, 401 Md. at 172, 931 A.2d at 1095.

## II. Discussion

The MVA argues that the DR–15 Advice of Rights form is not required to include notice that an administrative law judge, after conducting a hearing requested by a driver of a motor vehicle to modify the suspension of the driver's license, could refer the driver to the MAB, because the referral does not constitute an "administrative sanction" under Section 16–205.1(b) of the Transportation Article, Maryland Code (1977, 2006 Repl.Vol.).[6] The MVA contends that a referral is not an

---

**6.** As applicable in this case, Section 16–205.1(b) of the Transportation Article, Maryland Code (1977, 2006 Repl.Vol.), stated:

(b) *No compulsion to take chemical test; consequences of refusal.*—(1) Except as provided in subsection (c) of this section, a person may not be compelled to take a test. However, the detaining officer shall advise the person that, on receipt of a sworn statement from the officer that the person was so charged and refused to take a test, or was tested and the result indicated an alcohol concentration of 0.08 or more, the Administration shall:

(i) In the case of a person licensed under this title:

1. For a test result indicating an alcohol concentration of 0.08 or more at the time of testing:

A. For a first offense, suspend the driver's license for 45 days; or

B. For a second or subsequent offense, suspend the driver's license for 90 days; or

2. For a test refusal:

A. For a first offense, suspend the driver's license for 120 days; or

(ii) In the case of a nonresident or unlicensed person:

1. For a test result indicating an alcohol concentration of 0.08 or more at the time of testing:

A. For a first offense, suspend the person's driving privilege for 45 days; or

B. For a second or subsequent offense, suspend the person's driving privilege for 90 days; or

2. For a test refusal:

A. For a first offense, suspend the person's driving privilege for 120 days; or

B. For a second or subsequent offense, suspend the driver's license for 1 year;

B. For a second or subsequent offense, suspend the person's driving privilege for 1 year; and

(iii) In addition to any applicable driver's license suspensions authorized under this section, in the case of a person operating a commercial motor vehicle or who holds a commercial driver's license who refuses to take a test:

1. Disqualify the person's commercial driver's license for a period of 1 year for a first offense, 3 years for a first offense which occurs while transporting hazardous materials required to be placarded, and disqualify for life for a second or subsequent offense which occurs while operating any commercial motor vehicle; or

2. If the person holds a commercial driver's license issued by another state, disqualify the person's privilege to operate a commercial motor vehicle and report the refusal and disqualification to the person's resident state which may result in further penalties imposed by the person's resident state.

(2) Except as provided in subsection (c) of this section, if a police officer stops or detains any person who the police officer has reasonable grounds to believe is or has been driving or attempting to drive a motor vehicle while under the influence of alcohol, while impaired by alcohol, while so far impaired by any drug, any combination of drugs, or a combination of one or more drugs and alcohol that the person could not drive a vehicle safely, while impaired by a controlled dangerous substance, in violation of an alcohol restriction, or in violation of § 16–813 of this title, and who is not unconscious or otherwise incapable of refusing to take a test, the police officer shall:

(i) Detain the person;

(ii) Request that the person permit a test to be taken;

(iii) Advise the person of the administrative sanctions that shall be imposed for refusal to take the test, including ineligibility for modification of a suspension or issuance of a restrictive license under subsection (n)(1) or (2) of this section, and for test results indicating an alcohol concentration of 0.08 or more at the time of testing; and

(iv) Advise the person of the additional criminal penalties that may be imposed under § 27–101(x) of this article on conviction of a violation of § 21–902 of this article if the person knowingly refused to take a test arising out of the same circumstances as the violation.

(3) If the person refuses to take the test or takes a test which results in an alcohol concentration of 0.08 or more at the time of testing, the police officer shall:

(i) Confiscate the person's driver's license issued by this State;

(ii) Acting on behalf of the Administration, personally serve an order of suspension on the person;

(iii) Issue a temporary license to drive;

(iv) Inform the person that the temporary license allows the person to continue driving for 45 days if the person is licensed under this title;

(v) Inform the person that:

1. The person has a right to request, at that time or within 10 days, a hearing to show cause why the driver's license should not be suspended concerning the refusal to take the test or for test results

administrative sanction because the MAB referral, in and of itself, does not affect her driving privilege. The MVA also suggests that requiring notice of the MAB referral would frustrate the purpose of the DR–15.[7]

indicating an alcohol concentration of 0.08 or more at the time of testing, and the hearing will be scheduled within 45 days; and
2. If a hearing request is not made at that time or within 10 days, but within 30 days the person requests a hearing, a hearing to show cause why the driver's license should not be suspended concerning the refusal to take the test or for test results indicating an alcohol concentration of 0.08 or more at the time of testing will be scheduled, but a request made after 10 days does not extend a temporary license issued by the police officer that allows the person to continue driving for 45 days;
(vi) Advise the person of the administrative sanctions that shall be imposed in the event of failure to request a hearing, failure to attend a requested hearing, or upon an adverse finding by the hearing officer; and
(vii) Within 72 hours after the issuance of the order of suspension, send any confiscated driver's license, copy of the suspension order, and a sworn statement to the Administration, that states:
1. The officer had reasonable grounds to believe that the person had been driving or attempting to drive a motor vehicle on a highway or on any private property that is used by the public in general in this State while under the influence of alcohol, while impaired by alcohol, while so far impaired by any drug, any combination of drugs, or a combination of one or more drugs and alcohol that the person could not drive a vehicle safely, while impaired by a controlled dangerous substance, in violation of an alcohol restriction, or in violation of § 16–813 of this title;
2. The person refused to take a test when requested by the police officer, or the person submitted to the test which indicated an alcohol concentration of 0.08 or more at the time of testing; and
3. The person was fully advised of the administrative sanctions that shall be imposed, including the fact that a person who refuses to take the test is ineligible for modification of a suspension or issuance of a restrictive license under subsection (n)(1) or (2) of this section.

7. The MVA also argues that the Circuit Court was precluded from reviewing Ms. Delawter's Petition for Judicial Review with respect to the MAB referral because it was not a final order under the Maryland Administrative Procedure Act, Section 10–222 of the State Government Article, Maryland Code (1984, 2004 Repl.Vol.), and therefore, not ripe for review. Even assuming *arguendo* that the MAB referral was not a final order, we choose to reach the issue in this case because we granted the petition for certiorari in order to resolve the important question presented, which is likely to recur. *See* Md. Rule 8–131(a); *In re Katherine C.*, 390 Md. 554, 560 n. 10, 890 A.2d 295, 298 n. 10 (2006) ("We took this case, however, primarily to address the important issue

Ms. Delawter did not address the question presented in the MVA's petition for certiorari except when her counsel conceded that the DR–15 is not required to include notification of a potential referral to the MAB. Rather, she argues, after not having filed a cross-petition or a conditional cross-petition, that the ALJ did not have the authority to order Ms. Delawter to be evaluated by the Board.

## Standard of Review

Section 10–222 of the Maryland Administrative Procedure Act, codified as Section 10–222 of the State Government Article, Maryland Code (1984, 2004 Repl.Vol.), delineates that a court, upon judicial review of an administrative agency's decision, may decide to:

(1) remand the case for further proceedings;

(2) affirm the final decision; or

(3) reverse or modify the decision if any substantial right of the petitioner may have been prejudiced because a finding, conclusion, or decision:

(i) is unconstitutional;

(ii) exceeds the statutory authority or jurisdiction of the final decision maker;

(iii) results from an unlawful procedure;

(iv) is affected by any other error of law;

(v) is unsupported by competent, material, and substantial evidence in light of the entire record as submitted; or

(vi) is arbitrary and capricious.

In *Maryland Aviation Administration v. Noland*, 386 Md. 556, 873 A.2d 1145 (2005), Judge John C. Eldridge, writing for this Court, explored the standard of review of an adjudicatory decision by an administrative agency, stating:

A court's role in reviewing an administrative agency adjudicatory decision is narrow; it "is limited to determining if

---

of the appropriate use of the Guidelines in CINA review hearings. Because this issue is likely to arise again on remand in the present case, and in other cases as well, we shall address the issue.").

there is substantial evidence in the record as a whole to support the agency's findings and conclusions, and to determine if the administrative decision is premised upon an erroneous conclusion of law."

In applying the substantial evidence test, a reviewing court decides "whether a reasoning mind reasonably could have reached the factual conclusion the agency reached." A reviewing court should defer to the agency's fact-finding and drawing of inferences if they are supported by the record. A reviewing court "must review the agency's decision in the light most favorable to it; ... the agency's decision is prima facie correct and presumed valid, and ... it is the agency's province to resolve conflicting evidence" and to draw inferences from that evidence.

Despite some unfortunate language that has crept into a few of our opinions, a court's task on review is not to "substitute its judgment for the expertise of those persons who constitute the administrative agency." Even with regard to some legal issues, a degree of deference should often be accorded the position of the administrative agency. Thus, an administrative agency's interpretation and application of the statute which the agency administers should ordinarily be given considerable weight by reviewing courts. Furthermore, the expertise of the agency in its own field should be respected.

*Id.* at 571–72, 873 A.2d at 1154–55 (footnote omitted) (citations omitted). *See also MVA v. Illiano*, 390 Md. 265, 273–75, 888 A.2d 329, 332–33 (2005).

The issue itself of whether notice of a potential MAB referral must be included in the DR–15 Advice of Rights form under Section 16–205.1(b) of the Transportation Article involves a question of statutory interpretation. In *Motor Vehicle Administration v. Jones*, 380 Md. 164, 844 A.2d 388 (2004), we iterated:

It has long been settled by this Court that "the cardinal rule of statutory interpretation is to ascertain and effectuate the intention of the legislature." First and foremost, a court should thoroughly examine the plain language of the statute

when attempting to ascertain the Legislature's intentions. If the statutory language in question is unambiguous when construed according to its ordinary and everyday meaning, then this Court "will give effect to the statute as it is written." This Court, however, will not add or delete words from the statute. We will look "beyond the statute's plain language in discerning the legislative intent" only where the statutory language is ambiguous.

*Id.* at 175–76, 844 A.2d at 394–95 (citations omitted).

## The Medical Advisory Board

Since 1947,[8] the Administrator of the MVA has had the authority to appoint a Medical Advisory Board, consisting of "qualified physicians and optometrists," in order "to enable the Administration to comply properly with the provisions of [the Code] regarding the physical and mental condition of individuals who seek to drive on highways in this State." Maryland Code (1977, 2006 Repl.Vol.), Section 16–118(a) of the Transportation Article.[9] The Administrator may choose to

---

**8.** The MAB was established by Chapter 824 of the Maryland Laws of 1947, codified as Section 6A of Article 66½ of the Maryland Code (1947). Since its inception, the structure of the MAB has remained significantly unchanged.

**9.** Section 16–118 of the Transportation Article, Maryland Code (1977, 2006 Repl.Vol.), entitled, "Medical Advisory Board," provides:

(a) *Administrator may appoint Board and secretary.*—(1) The Administrator may appoint a Medical Advisory Board of qualified physicians and optometrists to enable the Administration to comply properly with the provisions of this title regarding the physical and mental condition of individuals who seek to drive on highways in this State. (2) The Administrator also may appoint a medical secretary to serve the Board.

(b) *Compensation.*—Each member of the Medical Advisory Board is entitled to compensation for each meeting that the member attends. The compensation shall be paid out of funds appropriated to the Administration.

(c) *Duties.*—(1) The Administrator may refer to the Medical Advisory Board, for an advisory opinion, the case of any licensee or applicant for a license, if the Administrator has good cause to believe that the driving of a vehicle by him would be contrary to public safety and welfare because of an existing or suspected mental or physical disability.

refer to the MAB, "the case of any licensee ... if the Administrator has good cause to believe that the driving of a vehicle by him would be contrary to public safety and welfare because of an existing or suspected mental or physical disability." *Id.* at 16–118(c). After the Administrator refers a case, the Board reviews the individual's physical and mental condition based upon information received from the driver and the driver's doctors and treatment providers, *see* COMAR 11.17.03.03 (2007),[10] and makes a recommendation to the MVA.

---

(2) The Board shall meet at the pleasure of the Administrator.

(d) *Records confidential.*—(1) The records of the Medical Advisory Board:

(i) Are confidential;

(ii) May be disclosed only on court order; and

(iii) May be used only to determine the qualifications of an individual to drive.

(2) A person may not use these records for any other purpose.

10.   COMAR 11.17.03.03 (2007) states in pertinent part:

Upon receipt of an application for a driver's license, or renewal of a driver's license, on which an individual has indicated that he has been treated for any of the listed disorders, or when a person is referred to the Medical Advisory Board by the Administrator for any other reason, the Administration shall follow the procedures set forth below:

A.   The Administration may require the individual to obtain from his physician a certificate indicating the onset of the condition, the physician's diagnosis and prognosis and the medication being prescribed. The individual shall forward the certificate to the Medical Advisory Board of the Administration.

B.   When the Medical Advisory Board receives the physician's certificate, a determination shall be made as to whether the physical or mental condition indicated in the certificate is of the type that might impair the individual's ability to operate a motor vehicle. If a determination is made that the condition might do so, the individual may be scheduled to appear before a panel of doctors of the Medical Advisory Board for an interview. At this interview the individual will be given the opportunity to present additional medical information on his own behalf and will be required to answer any questions asked by the doctors conducting the interview.

C.   If an individual is asked to appear for an interview before a panel of the Medical Advisory Board, he shall be:

(1) Notified in writing of the physical or mental condition being evaluated by the Board; and

(2) Notified of the names of the physicians who compose the panel and their medical specialty or specialties; notice will be given by

*See* Maryland Code (1977, 2006 Repl.Vol.), Section 16–118(c) of the Transportation Article. The Board does not have the power to take any action against an individual's driver's license, although potentially it could recommend denial, suspension, modification or revocation of a driver's license, as well as reexamination at an MVA office. *See id.* at 16–207; CO-MAR 11.17.03.04–.06 (2007). If the MVA adopts the Medical Advisory Board's proposed actions, the driver is then notified and is entitled to request an administrative hearing to challenge the MVA's actions. *See* COMAR 11.17.03.05–.06 (2007).

The MVA receives reports about individual drivers potentially prompting a MAB referral from numerous sources, such as the driver. *See* COMAR 11.17.03.02–1A (2007). Moreover, as the MVA has indicated, and counsel for Ms. Delawter conceded, private citizens, hearing judges, law enforcement officers, and presumably any individual, including a relative, also could contact the MVA out of concern regarding a driver's capability behind the wheel. *See also* 82 Op. Att'y Gen. 189, 189 (Md.1997) (noting that cause for a referral to the MAB can come from police officers or other citizens); 82 Op. Att'y Gen. 111, 112 (Md.1997) ("Occasionally, the MVA's 'good cause to believe that [a] licensee is unfit . . .' derives from a report from someone who has observed the individual's driving practices. **Indeed, the information might come from a relative or someone else close to the driver.** The informant might provide information to the MVA out of a fear that the driver's deteriorated health could lead to a tragic accident if the driver continued to drive.") (emphasis added) (alteration and ellipsis in original).

Although anyone can provide such information to the MVA and although the ALJ in the instant case purported to "refer" Ms. Delawter to the Board, only the Administrator of the MVA has the authority to refer to the MAB pursuant to the express language of Section 16–118(c) of the Transportation Article, Maryland Code (1977, 2006 Repl.Vol.), which states

posting names and medical specialties in a conspicuous location at the interview site.

that "[t]he Administrator may refer to the Medical Advisory Board...." The MVA has informed the ALJs of this, iterating that regardless of the terminology used, a "referral" to the Medical Advisory Board by an ALJ, as purportedly made in the instant case, will be treated only as a recommendation.[11]

## The DR–15 Notice Requirement

In the case *sub judice*, the ALJ referred Ms. Delawter to the Medical Advisory Board. The sole issue before us is whether the DR–15 Advice of Rights form needs to include a notification that an administrative law judge, after conducting a hearing requested by a driver to modify the suspension of the driver's license, could refer the driver to the MAB. The Circuit Court judge reversed the ALJ's referral to the Board, because Ms. Delawter did not receive notice on the DR–15 Advice of Rights form "that by exercising her right to a hearing she was facing a possible referral to the MAB." We disagree.

---

**11.** *See* Letter from former MVA Administrator Anne S. Ferro to Chief Administrative Law Judge John W. Hardwicke, November 24, 1999, stating:

[W]hile we agree that an ALJ hearing a license suspension matter has not been delegated authority to make a final good cause determination whether referral to the Board is appropriate, ALJs may recommend that the MVA refer the driver's case for that purpose, just as the police or any other reliable source may do.

\* \* \*

Administrative Law Judges are experienced in reviewing and assessing alcohol offenders. They provide the MVA with a reliable source of information that may establish good cause to believe a driver is unfit or unsafe, where the ALJ has reviewed the driver's record, heard evidence about the driver's behavior and observed that driver in person. The MVA values the OAH's efforts in identifying these drivers for possible review by the Board, and hopes the ALJs will continue that effort. In light of the recent litigation, however, ALJs should understand that their role is in the nature of a recommendation rather than a statutory "referral" by the Administrator under § 16–118. The ALJs may wish to avoid any future semantical misunderstandings by describing this type of action as a "recommendation for a referral to the MAB" or something similar.

In order to prevent confusion, however, we will use the term "referral" to describe the ALJ's action because the parties framed the issue as such.

Under Maryland's Implied Consent Law, a prerequisite to the MVA's suspension of a driver's license, after a hearing, is a finding that the police officer advised the driver of "the administrative sanctions that shall be imposed...." Maryland Code (1977, 2006 Repl.Vol.), Section 16–205.1(b)(2)(iii) of the Transportation Article. To document that police officers satisfactorily comply with the notice requirements, "[t]he MVA has developed an Advice of Rights Form, the DR–15, which accurately and adequately conveys to the driver the rights granted by the statute." *Forman v. MVA*, 332 Md. 201, 218, 630 A.2d 753, 762 (1993). *See also Shepard,* 399 Md. at 247 n. 3, 923 A.2d at 103 n. 3 (stating that the DR–15 "contains warnings required under [Section 16–205.1(b) ]"); *MVA v. Karwacki,* 340 Md. 271, 275, 666 A.2d 511, 513 (1995); *McAvoy v. State,* 314 Md. 509, 512–13, 551 A.2d 875, 876–77 (1989). The DR–15 is "a standardized statement of a detained driver's rights and the adverse administrative consequences," *Willis v. State,* 302 Md. 363, 368 n. 3, 488 A.2d 171, 174 n. 3 (1985), which, "in addition to advising individuals of the consequences of a test refusal, sets forth the sanctions for having a blood alcohol concentration in excess of the statutory limit, explains the administrative review process, and advises of the potential disqualification of a suspected drunk driver's Commercial Driver's License for a test refusal." *MVA v. Atterbeary,* 368 Md. 480, 496, 796 A.2d 75, 85 (2002). *See also Fowler v. MVA,* 394 Md. 331, 337, 906 A.2d 347, 350 (2006) ("The use of this form is intended, first, to advise the arrested driver of the consequences of refusing or failing a chemical breath test and, second, to certify that the officer complied with the ... advice of rights requirement.").

The DR–15 Advice of Rights form, therefore, is derived from and memorializes the notice required under the Implied Consent Law, *see Shepard,* 399 Md. at 247 n. 3, 923 A.2d at 103 n. 3; *Fowler,* 394 Md. at 337–38, 906 A.2d at 350; *Illiano,* 390 Md. at 269 n. 7, 888 A.2d at 332 n. 7; *Atterbeary,* 368 Md. at 496, 796 A.2d at 85; *Karwacki,* 340 Md. at 275, 666 A.2d at 513; *McAvoy,* 314 Md. at 512–13, 551 A.2d at 876–77; *Willis,* 302 Md. at 368 n. 3, 488 A.2d at 174 n. 3; *Sites v. State,* 300

Md. 702, 707 n. 1, 481 A.2d 192, 194 n. 1 (1984), and we have had the occasion to address what notice must be provided to a detained driver under that law. In *Motor Vehicle Adminis-tration v. Chamberlain*, 326 Md. 306, 604 A.2d 919 (1992), Chamberlain, a driver who refused to take an alcohol concen-tration test and had his license suspended, complained that the police failed to inform him when reading verbatim from a DR–15 that if he took and failed the alcohol concentration test, the MVA could modify his suspension or issue him a restricted license. We rejected Chamberlain's argument and concluded that the "[m]ere potential eligibility of suspension or a restric-tive license is not 'an administrative sanction'" within Section 16–205.1(b); we stated that,

> the critical provisions of the statute refer to "administrative sanctions that shall be imposed;" it is only those of which a driver is required to be informed. Mere potential eligibility for modification of suspension or a restrictive license is not an "administrative sanction that shall be imposed." Eligibil-ity for modification of suspension or for a restrictive license becomes reality only if the driver meets the statutory prerequisites, and, then, only if the ALJ, in the exercise of discretion, finds modification of suspension or issuance of a restrictive license appropriate. It is inconceivable that the Legislature intended "sanctions" to include advice concern-ing **a mere potentiality.** A driver who refuses a test or fails it is certain to have his license suspended; the applica-tion of § 16–205.1(f)(8)(v) is universal, not dependent upon individual factors. On the other hand, the possibility that the suspension will be modified or a restrictive license issued is only that—a possibility, **a mere potentiality.** Moreover, whether that possibility will even be an incentive is an inquiry that is person specific; only if the person meets, or arguably meets, the statutory prerequisites will it be an incentive.

\* \* \*

Furthermore, as we have seen, it is not certain that, upon failure of the test, the driver's suspension will be modified

or a restrictive license issued. . . . Thus, it would be impossible to advise a driver without checking the driving record and, if checked, guessing not only as to the driver's eligibility, but also the likelihood that he or she would be favorably considered. For this reason as well "sanctions" can only refer to an outcome that is certain to happen. The suspension of the driver's license must occur whenever the statutory prerequisites have been met, whether the driver refuses the test or fails the test after taking it.

\* \* \*

We hold that Chamberlain was properly advised of the "sanctions that shall be imposed" and, accordingly, that the trial court erred in ruling otherwise.

*Id.* at 318–23, 604 A.2d at 925–27 (emphasis added) (citations omitted) (footnote omitted). See also *Hare v. Motor Vehicle Administration,* 326 Md. 296, 604 A.2d 914 (1992), a companion case to *Chamberlain,* wherein Hare, who was advised of his rights when an officer read to him from a DR–15, argued that under the Fourteenth Amendment and Article 24 of the Declaration of Rights of the Maryland Constitution, he should have been advised that by taking the chemical sobriety test he would remain eligible for a modification of suspension or a restricted license, even if he failed. We rebuffed this argument; Chief Judge Robert M. Bell, writing for this Court, just as in *Chamberlain,* recognized:

We have today held that § 16–205.1(b)(2)(iii) does not require a police officer to advise a driver of the mere possible eligibility for a modification of suspension or a restrictive license should that driver take and fail a chemical test. The only advice that the officer must give the driver, we said, is that which is specifically set out in § 16–205.1(b)(1).

\* \* \*

A driver need not be told of every conceivable incentive for taking a chemical test for alcohol or, for that matter, even one additional incentive not required by the statute. This

conclusion is, we think, buttressed both by Maryland law and common sense. As to the latter, when it is once determined that a driver must be apprised of additional incentives, there is no rational basis for determining which of those additional incentives must be covered and which are not of sufficient value to merit inclusion in the advice given the arrestee.

Our cases teach that due process does not always require the State affirmatively to inform a defendant of the availability of options that might influence decision-making. It requires no more than that the State not mislead the defendant or construct road blocks, thus unduly burdening that decision-making.

\* \* \*

Having provided the advice mandated by the statute, the police officer was not required to anticipate, or guess at, what incentive would have caused the driver to take the chemical test. Nor was he, as a matter of due process, required to provide any advice other than that the statute prescribed. Indeed, had he undertaken to provide additional information and it turned out to be misleading or inaccurate, that, in itself, may have been a denial of due process.

*Id.* at 300, 304, 306, 604 A.2d at 916, 917, 918–19 (citations omitted).[12]

---

**12.** In response to our decisions in *Chamberlain* and *Hare,* the Legislature modified the notice provisions in Section 16–205.1(b) of the Transportation Article in 1993, requiring that an officer's advice to a driver include "ineligibility for modification of a suspension or issuance of a restrictive license" when the individual refuses the alcohol concentration test. *See* 1993 Md. Laws, Chap. 407. In *Forman v. Motor Vehicle Administration,* 332 Md. 201, 218 n. 8, 630 A.2d 753, 762 n. 8 (1993), we construed that amendment as requiring officers "to specifically advise suspected drunk drivers that the suspension for refusal to take an alcohol concentration test is mandatory," and we presumed that the DR–15 used by law enforcement agencies "will be amended accordingly." It was. *See Meanor v. State,* 364 Md. 511, 531, 774 A.2d 394, 405 (2001).

In *Meanor v. State,* 364 Md. 511, 774 A.2d 394 (2001), Meanor initially refused to take a breathalyzer test but later consented; thereafter, he was charged with driving under the influence. Before agreeing to the test, the officer read a DR–15 to Meanor, who also read the form. Meanor moved, *in limine,* to exclude the results of the breath test because the DR–15 did not indicate if he refused the test, that the MVA could modify the required suspension if he agreed to participate in the Ignition Interlock System Program. We concluded, however, that for a test refusal, "the issue remains governed by *Chamberlain* and *Hare,*" and "the officer must advise only as to the 'administrative sanctions' that will be imposed.... **The prospect of a modification of the suspension or a restrictive license under subsection (n)(4) is a mere possibility and not a sanction.** The test result was admissible." *Id.* at 532, 774 A.2d at 406 (emphasis added).

The Implied Consent Law, as we have heretofore held, requires notification of the sanctions specifically delineated therein, and does not require notification that an administrative law judge, after conducting a hearing requested by a driver to modify the driver's license suspension could refer the driver to the Medical Advisory Board. If we were to hold that notice of the possible referral to the MAB was required, we would be inserting another provision in the statute, which we have consistently rebuffed. *See Alavez v. MVA,* 402 Md. 727, 735, 939 A.2d 139, 143–44 (2008).

The phrase "administrative sanctions that shall be imposed" also clearly does not include possible sanctions or mere potentialities. *Meanor,* 364 Md. at 532, 774 A.2d at 406; *Chamberlain,* 326 Md. at 318, 604 A.2d at 924–25; *Hare,* 326 Md. at 299–300, 604 A.2d at 915–16. A referral to the MAB represents such a "mere potentiality" because it does not affect any right, interest, privilege or legal status of the driver.

For these reasons, we hold that the DR–15 Advice of Rights form does not need to include notice that an administrative law judge, after conducting a hearing requested by a driver to

modify the suspension of the driver's license, could refer the driver to the MAB.

**JUDGMENT OF THE CIRCUIT COURT FOR FREDERICK COUNTY REVERSED AS TO MEDICAL ADVISORY BOARD REFERRAL ISSUE. CASE REMANDED TO THAT COURT WITH INSTRUCTIONS TO AFFIRM THE RULING OF THE ADMINISTRATIVE LAW JUDGE. COSTS TO BE PAID BY RESPONDENT.**