844 A.2d 388

MOTOR VEHICLE ADMINISTRATION

v.

Keith D. JONES.

No. 75, Sept. Term, 2003.

Court of Appeals of Maryland.

March 10, 2004.

Robert C. Cain, II, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., on brief), for petitioner.

James R. Lupinek, Ellicott City, for respondent.

Argued before BELL, C.J., RAKER, WILNER, CATHELL, HARRELL, BATTAGLIA and GREENE, JJ.

CATHELL, J.

This case arises out of an Administrative Law Judge's decision, made on behalf of the Motor Vehicle Administration, ultimately resulting in the suspension of the Maryland driving privileges of Keith D. Jones, respondent, following a driving incident where respondent refused to submit to a chemical breath test. On October 12, 2002, respondent was forcibly stopped by officers following a police chase where respondent attempted to drive his car the wrong way on Interstate Route 95 toward the Fort McHenry Tunnel. Respondent, who failed field sobriety tests, was issued an Order of Suspension, pursuant to Md.Code (1977, 1999 Repl.Vol., 2003 Supp.), § 16–205.1 of the Transportation Article,[1] for refusing to take a chemical breath test to determine his amount of alcohol consumption.

Respondent contested this suspension at an administrative show cause hearing conducted by an Administrative Law Judge (ALJ), to whom the Motor Vehicle Administration (hereinafter, the "Administration" or "Agency"), petitioner, had delegated final administrative decision-making authority

---

1. Hereinafter, unless noted otherwise, all statutory references are to this section of the Maryland Code.

in such cases, pursuant to § 16–205.1. Following a hearing, the ALJ found that respondent had violated § 16–205.1 and respondent's Maryland driving privileges were suspended by the Administration for 120 days. Respondent sought judicial review of the Agency's decision in the Circuit Court for Anne Arundel County. The Circuit Court reversed the Agency's decision and vacated the 120–day suspension of respondent's driving privileges.

The Administration then filed a Petition for Writ of Certiorari to this Court and on October 9, 2003, this Court granted the petition. *Motor Vehicle Administration v. Jones,* 377 Md. 275, 833 A.2d 31 (2003). In its brief, the Administration presents one question for our review:

"Did the circuit court err in reversing an administrative suspension decision upon its own finding of facts and requiring that the MVA prove a suspected drunk driver was asked to take a chemical breath test within two hours of his apprehension, where the implied consent statute Md.Code Ann., Transp. § 16–205.1(f) does not impose such a requirement?"

We answer the Administration's question in the affirmative and reverse the judgment of the Circuit Court for Anne Arundel County. We hold that the text of § 16–205.1(f)(7)(i) is clear and unambiguous and limits the issues to be considered by an ALJ in a suspension hearing to the six enumerated issues of § 16–205.1(f)(7)(i)(1–6). As the issue of whether an arresting officer must advise and request a chemical breath test from a suspected drunk driver within two hours of the driver's apprehension is not listed within the § 16–205.1(f)(7)(i) factors, the ALJ did not have to consider that issue when determining the findings of fact and conclusions of law resulting in the suspension of respondent's driving privileges by the Administration for refusal to take the chemical breath test.

## I. Facts

On October 12, 2002, Officer Blair of the Maryland Transportation Authority Police observed a Ford Explorer, driven

by respondent, facing sideways across the northbound traffic lanes of Interstate 95 (I–95) at mile marker 56.2, near the Fort McHenry Tunnel. Officer Blair proceeded to pull his cruiser behind the vehicle and activated his lights and siren. Respondent made a U-turn from his position and proceeded to drive south in the northbound lane of Interstate Route 95 in the direction of the Fort McHenry toll booth plaza. He was pursued by the officer. During the chase, respondent veered in front of several oncoming vehicles. At approximately 1:59 p.m., other officers, including Officer W.R. Morningstar of the Maryland Transportation Police, were called to assist in apprehending respondent. According to the Statement of Probable Cause [2] filed by Officer Morningstar, respondent finally stopped his vehicle after another officer, Officer Grimm, "stood in the roadway causing the Explorer to stop."

The Statement of Probable Cause further stated that, after respondent stopped his vehicle, Officer Morningstar "observed the operator [respondent] stepping out of the vehicle and attempting to walk to the rear of the vehicle. The operator kept his hand on the vehicle to steady himself and when he reached the rear, he sat down on the bumper because he was having problems standing on his own" (alteration added). During the course of the stop, Officer Morningstar smelled the odor of alcohol on respondent's breath and observed respondent's poor coordination. He also noted that respondent performed poorly on, and thus failed, the sobriety field tests administered during the stop. The officers on the scene believed that respondent had been driving his vehicle while impaired or under the influence of alcohol due to respondent's driving behavior, his poor performance on the field tests and the officers' observations during the stop.

---

**2.** The Statement of Probable Cause was included in the record in the case *sub judice* due to the fact that the arresting officer submitted it to the Motor Vehicle Administration along with the forms required to be sent to the Motor Vehicle Administration following a drinking and driving incident pursuant to Md.Code (1977, 1999 Repl.Vol., 2003 Supp.), § 16.205.1(b)(3)(vii). Thus, the administrative record in the case *sub judice* contains substantial detail about the incident occurring on October 12, 2002.

Officer Morningstar then placed respondent in a patrol car and, according to the officer, respondent was read his DR–15 "Advice of Rights" form at that time. After being read his rights, respondent stated that he would refuse all chemical breath sobriety tests. The Statement of Probable Cause indicated that respondent's refusal of the test occurred shortly after he was placed in an officer's patrol car, but it did not indicate the exact time of the refusal.[3] Respondent, however, did not actually sign the DR–15 advice form until 4:40 p.m., which acknowledged in writing his refusal to take the breath test. Pursuant to § 16–205.1 of the Transportation Article, Officer Morningstar issued respondent an Order of Suspension.

Pursuant to his rights under § 16–205.1(b)(3)(v)(1), respondent requested an administrative "hearing to show cause why [respondent's] driver's license should not be suspended concerning the refusal to take the [chemical breath] test" (alterations added). On December 12, 2002, a hearing was conducted in front of an ALJ at the Office of Administrative Hearings. The Administration presented several documents at the hearing which were admitted into evidence by the ALJ, including the DR–15A "Officer Certification and Order of Suspension," the Statement of Probable Cause and the respondent-signed DR–15 "Advice of Rights" form acknowledging respondent's refusal to take the chemical breath test.

Respondent did not testify or offer any evidence during the hearing. Respondent, however, argued that he had not been properly advised by Officer Morningstar of the ramifications of a refusal to take the chemical breath test. Respondent contended, and the Circuit Court found, that the incident occurred at 1:59 p.m. because that was the time Officer Morningstar listed on the Statement of Probable Cause as the

---

**3.** Specifically, the Statement of Probable Cause noted that "[u]pon placing [respondent] in the patrol car, [Officer Morningstar] read him the DR–15 and [respondent] stated he was refusing all tests" (alterations added).

time he was called to assist with the situation.[4] Respondent also asserted that over two hours had passed before he was advised about and asked to take the chemical breath test because 4:40 p.m. was the time recorded next to respondent's and Officer Morningstar's signatures on the DR–15 "Advice of Rights" form. As a result, respondent argued that he was not asked to take a chemical breath test, nor was he read his "Advice of Rights" form in a timely manner, *i.e.*, within two hours of his apprehension.

The ALJ found that respondent's argument was only relevant in a criminal prosecution. The ALJ stated:

"The case law cited by [respondent] pertains to criminal action. This is an administrative proceeding. The two hour limitation on alcohol tests that you've cited in the Courts and Judicial Proceedings Article of the Maryland Code is not applicable in administrative hearings. . . .

. . .

"The other point is that this individual made an election to refuse to take the test. I don't think that a dismissal or a no action in this matter is appropriate or warranted.

. . .

". . . [T]his is an administrative proceeding not a criminal proceeding and the time frame is not something that is

---

4. In the alternative to the Administration's main argument that the plain language of § 16–205.1(f)(7)(i) does not require proof the chemical test request was refused within two hours of the suspect's apprehension, the Administration additionally argues that the Circuit Court erred when it made several findings of fact not made by the ALJ in derogation of our holding that "[a] court reviewing a decision of an administrative agency generally is limited to determining whether there was substantial evidence on the record as a whole to support the agency's findings of fact and whether the agency's conclusions of law were correct." *Motor Vehicle Administration v. Lytle*, 374 Md. 37, 56–57, 821 A.2d 62, 73 (2003) (alteration added) (footnote added). *See also Motor Vehicle Administration v. Atterbeary*, 368 Md. 480, 490–91, 796 A.2d 75, 81–82 (2002); Md.Code (1984, 1999 Repl.Vol.), § 10–222(h) of the State Government Article. As our resolution of the plain language issue is dispositive in the case *sub judice*, we need not pin our holding on this issue, even though it had merit.

looked at in administrative proceedings." [Alterations added.]

The ALJ found that:

"After considering the evidence ... presented in this case, I find by a preponderance of the evidence that the police officers who stopped and detained [respondent] had reasonable grounds to believe that [respondent] was driving or attempting to drive a motor vehicle while under the influence of or impaired by alcohol based on the fact that on October 12, 2002, the investigating ... police officer observed [respondent] driver make a U-turn on Interstate Route 95 and drive into oncoming traffic forcing other traffic to take evasive action to avoid collisions. [Respondent] stopped his vehicle only after a police officer stood in front of his vehicle. Police officers detected a strong odor of an alcoholic beverage on [respondent's] breath. [Respondent] needed to hold onto the guardrail and his vehicle to maintain balance while out of the vehicle. [Respondent] performed poorly on or failed field sobriety exercises that were administered to him. I also find that the police fully advised [respondent] driver of administrative sanctions to be imposed as evidence by a review of ... the [signed] DR-15 [form]. And that [respondent] driver refused to take a chemical test for intoxication. I conclude that [respondent] has violated Section 16-205.1 of the Transportation [Article]." [Alterations added.]

The Agency then suspended respondent's privilege to drive in Maryland for 120 days as provided for in § 16-205.1(b)(1)(i)(2)(A).

Respondent sought judicial review of the Agency's decision in the Circuit Court for Anne Arundel County and that court heard the case on July 14, 2003. On July 16, 2003, the Circuit Court issued an Order reversing the decision of the Agency and vacating the 120-day suspension of respondent's Maryland driving privileges. The Circuit Court held that the Administration:

"had the burden to prove that [respondent] was offered an alcohol concentration test within the two-hour statutory limitation and that [respondent] refused it. The requirement is clear and unambiguous, and it equally applies to all persons who are stopped for suspected driving while under the influence of alcohol and all police officers who arrest them. Since there was no evidence that [respondent] was offered the test within the two-hour statutory limitation, the [Circuit] Court will reverse and vacate the decision of the ALJ and the 120 day license suspension." [Alterations added.]

## II. Discussion

Section 16–205.1 of the Transportation Article, commonly known as Maryland's Implied Consent Law, provides the statutory structure for the suspension of a suspected drunk motorist's driving privileges where that driver refuses to submit to a chemical breath test for intoxication.[5] Section 16–205.1(a)(2) states:

"(2) Any person who drives or attempts to drive a motor vehicle on a highway or on any private property that is used by the public in general in this State is deemed to have consented, subject to the provisions of §§ 10–302 through 10–309, inclusive, of the Courts and Judicial Proceedings Article, to take a test if the person should be detained on suspicion of driving or attempting to drive while under the influence of alcohol, while impaired by alcohol, while so far impaired by any drug, any combination of drugs, or a combination of one or more drugs and alcohol that the person could not drive a vehicle safely, while impaired by a controlled dangerous substance, in violation of an alcohol restriction, or in violation of § 16–813 of this title."

Pursuant to § 16–205.1(b)(1) of the Transportation Article, an officer detaining a suspected drunk driver must advise the

---

**5.** The type of test to be administered is governed by Md.Code (1973, 1998 Repl.Vol., 2003 Supp.), § 10–305 of the Courts and Judicial Proceedings Article.

suspect of certain rights enumerated in that subsection and may not compel that suspect to take a chemical breath test.[6] Section § 16–205.1(b) further discusses the exact procedures an officer must follow if the officer has reasonable grounds to suspect the driver is under the influence of alcohol or drugs, including detaining the suspect, requesting a chemical breath and/or blood test and advising the suspect of administrative sanctions for refusal to take a requested test. If, as occurred in the case *sub judice,* the suspect refuses to take the chemical breath test after being properly advised, § 16–205.1(b)(3) directs the officer to confiscate the suspect's driver's license, serve an order of suspension, issue a temporary license and inform the suspect of the suspect's right to a hearing and of the possible administrative sanctions.

The procedure regarding such an administrative hearing is set forth by § 16–205.1(f).[7] The specific issues to be consid-

---

**6.** Section 16–205.1 is an extremely lengthy statute, thus we only include the text specifically relevant to our inquiry in the case *sub judice.* The relevant text of § 16–205.1(b)(1) states:

"(b) *No compulsion to take chemical test; consequences of refusal.*—(1) Except as provided in subsection (c) of this section, a person may not be compelled to take a test. However, the detaining officer shall advise the person that, on receipt of a sworn statement from the officer that the person was so charged and refused to take a test, or was tested and the result indicated an alcohol concentration of 0.08 or more, the Administration shall:

(i) In the case of a person licensed under this title:

. . .

2. For a test refusal:

A. For a first offense, suspend the driver's license for 120 days; or

B. For a second or subsequent offense, suspend the driver's license for 1 year; . . ."

**7.** Section 16–205.1(f)(1) states:

"(f) *Notice and hearing on refusal to take test; suspension of license or privilege to drive; disqualification from driving commercial vehicles.*—(1) Subject to the provisions of this subsection, at the time of, or within 30 days from the date of, the issuance of an order of suspension, a person may submit a written request for a hearing before an officer of the Administration if:

(i) The person is arrested for driving or attempting to drive a motor vehicle while under the influence of alcohol, while impaired by alcohol, while so far impaired by any drug, any combination of drugs, or a combination of one or more drugs and alcohol that the person

ered by an ALJ during the suspension hearing are enumerated by § 16–205.1(f)(7)(i), which states:

"(7)(i) At a hearing under this section, the person has the rights described in § 12–206 [8] of this article, but *at the hearing the only issues shall be:*

1. Whether the police officer who stops or detains a person had reasonable grounds to believe the person was driving or attempting to drive while under the influence of alcohol, while impaired by alcohol, while so far impaired by any drug, any combination of drugs, or a combination of one or more drugs and alcohol that the person could not drive a vehicle safely, while impaired by a controlled dangerous substance, in violation of an alcohol restriction, or in violation of § 16–813 of this title;

2. Whether there was evidence of the use by the person of alcohol, any drug, any combination of drugs, a combination of one or more drugs and alcohol, or a controlled dangerous substance;

3. Whether the police officer requested a test after the person was fully advised of the administrative sanctions that shall be imposed, including the fact that a person who refuses to take the test is ineligible for modification of a suspension or issuance of a restrictive license under subsection (n)(1) and (2) of this section;

4. Whether the person refused to take the test;

---

could not drive a vehicle safely, while impaired by a controlled dangerous substance, in violation of an alcohol restriction, or in violation of § 16–813 of this title; and

(ii) 1. There is an alcohol concentration of 0.08 or more at the time of testing; or

2. The person refused to take a test."

**8.** Md.Code (1977, 1999 Repl.Vol.), § 12–206 of the Transportation Article states:

"Except as otherwise provided in this article, a hearing held under the Maryland Vehicle Law shall be conducted in accordance with Title 10, Subtitle 2 of the State Government Article."

5. Whether the person drove or attempted to drive a motor vehicle while having an alcohol concentration of 0.08 or more at the time of testing; or

6. If the hearing involves disqualification of a commercial driver's license, whether the person was operating a commercial motor vehicle.

(ii) The sworn statement of the police officer and of the test technician or analyst shall be prima facie evidence of a test refusal or a test resulting in an alcohol concentration of 0.08 or more at the time of testing." [Footnote added.] [Emphasis added.]

The central issue in the case *sub judice* is whether § 16-205.1(f)(7)(i) implicitly requires that, in a § 16-205.1 suspension hearing, the Administration must also establish that the arresting officers satisfied the requirements of the provisions of § 10-303 of the Courts and Judicial Proceedings Article.

As a § 16-205.1 suspension hearing for refusal to submit to a chemical breath test and its possible administrative sanctions are purely statutory in nature, we look to the well-settled canons of statutory interpretation in making our holding. It has long been settled by this Court that "the cardinal rule of statutory interpretation is to ascertain and effectuate the intention of the legislature." *Holbrook v. State,* 364 Md. 354, 364, 772 A.2d 1240, 1245–46 (2001) (quoting *In re Anthony R.,* 362 Md. 51, 57, 763 A.2d 136, 139 (2000) (internal citation omitted)). First and foremost, a court should thoroughly examine the plain language of the statute when attempting to ascertain the Legislature's intentions. *Holbrook,* 364 Md. at 364, 772 A.2d at 1246; *In re Anthony R.,* 362 Md. at 57, 763 A.2d at 139. If the statutory language in question is unambiguous when construed according to its ordinary and everyday meaning, then this Court "will give effect to the statute as it is written." *Pak v. Hoang,* 378 Md. 315, 323, 835 A.2d 1185, 1189 (2003) (quoting *Moore v. Miley,* 372 Md. 663, 677, 814 A.2d 557, 566 (2003) (internal citation omitted)). This Court, however, will not add or delete words from the statute. *Gillespie v. State,* 370 Md. 219, 222, 804 A.2d 426, 427 (2002).

We will look "beyond the statute's plain language in discerning the legislative intent" only where the statutory language is ambiguous. *Comptroller of the Treasury v. Clyde's of Chevy Chase, Inc.*, 377 Md. 471, 483, 833 A.2d 1014, 1021 (2003).

The Administration argues that the plain language of § 16–205.1(f)(7)(i) clearly sets out the *"only"* factors that should be considered by an ALJ when deciding whether the Administration should suspend a motorist's driving privileges for refusal to submit to a chemical breath test and that the Legislature did not intend to include any additional issues. The Administration further argues that the Legislature did not intend for § 16–205.1(f)(7)(i) to contain technical loopholes to benefit suspected drunk drivers because the purpose for enacting the implied consent law was to encourage drivers to take the test and to protect the safety of the public. *See Motor Vehicle Administration v. Richards*, 356 Md. 356, 373, 739 A.2d 58, 68 (1999). The Administration additionally argues that the statute in question was not enacted to protect the suspected drunk driver's due process rights, but to obtain the best evidence of the driver's impairment to get that driver off of the State's roadways in order to protect public safety.

Respondent, however, contends that, regardless of § 16–205.1(f)(7)(i)'s limiting language, the fact that § 16–205.1(a)(2) cross references §§ 10–302 through 10–309 of the Court and Judicial Proceedings Article [9] adds implicit issues to an ALJ's suspension hearing determinations. In addition, respondent argues that § 16–205.1(f) must be read in conjunction with § 16–205.1(g), which sets out the procedure for a suspected

---

**9.** Specifically, respondent argues that § 16–205.1(f)(7)(i) implicitly requires the Administration to prove that the chemical breath test was offered within the two hour statutory time period pursuant to Md.Code (1973, 1998 Repl.Vol., 2003 Supp.), § 10–303(a) of the Courts and Judicial Proceedings Article, which states:

"(a) *Alcohol concentration.*—(1) A specimen of breath or 1 specimen of blood may be taken for the purpose of a test for determining alcohol concentration.

(2) For the purpose of a test for determining alcohol concentration, the specimen of breath or blood shall be taken within 2 hours after the person accused is apprehended."

drunk driver's withdrawal of an initial refusal to submit to the chemical breath test, a withdrawal that must be unequivocally given within two hours of the suspect's apprehension. Respondent argues that to not include the two hour requirement within a suspension hearing would render § 16–205.1(g) meaningless.

In the case *sub judice*, we hold that the language of § 16–205.1(f)(7)(i) of the Transportation Article is clear and unambiguous on its face. The section states that at a suspension hearing under subsection (f) "the *only* issues shall be" the six enumerated issues in the section (emphasis added). The word "only" is defined as "no one or nothing more besides; solely or exclusively ... no more than ... merely." *The Oxford American College Dictionary* 953 (Putnam 2002). It is a limiting word. When used as it is in § 16–205.1(f)(7)(i), *i.e.,* preceding a list of several factors to be considered, it is used to exclude all other possible factors. If the Legislature intended the ALJ to consider whether the officers requested the chemical breath test within two hours of his apprehension, it would have included a seventh factor under (f)(7)(i). In providing for administrative sanctions, the Legislature appears to be concerned solely with the issue of whether the refusal was *informed* and not with the lapse of time between the suspect's apprehension and the test being requested.

Further support for this interpretation is shown in the requirements of § 16–205.1(f)(8)(i), which directs the suspension of a suspect's license if the ALJ makes the following four findings:

"1. The police officer who stopped or detained the person had reasonable grounds to believe the person was driving or attempting to drive while under the influence of alcohol, while impaired by alcohol, while so far impaired by any drug, any combination of drugs, or a combination of one or more drugs and alcohol that the person could not drive a vehicle safely, while impaired by a controlled dangerous substance, in violation of an alcohol restriction, or in violation of § 16–813 of this title;

2. There was evidence of the use by the person of alcohol, any drug, any combination of drugs, a combination of one or more drugs and alcohol, or a controlled dangerous substance;

3. The police officer requested a test after the person was fully advised of the administrative sanctions that shall be imposed, including the fact that a person who refuses to take the test is ineligible for modification of a suspension or issuance of a restrictive license under subsection (n)(1) and (2) of this section; and

4. A. The person refused to take the test; or

B. A test to determine alcohol concentration was taken and the test result indicated an alcohol concentration of 0.08 or more at the time of testing."

The Legislature did not include any reference to whether the officer requested the test within two hours of the suspect's apprehension in this provision. As the issue was omitted from both (f)(7) and (f)(8), it is clear that the Legislature did not intend that issue to be a factor for the ALJ's consideration in a license suspension hearing where the suspect refused to take a chemical breath test. Moreover, the provision requiring that a withdrawal of a refusal be within two hours of the suspect's apprehension [10] would only be relevant if, in fact, a withdrawal of refusal was made or attempted. None was attempted here.

■ This plain language interpretation limiting the (f)(7)(i) factors to those specifically enumerated in the statute is in line with the Legislature's intent that § 16–205.1 "was written to provide, in cases of drunk driving, 'a swift penalty which is separate from any criminal penalties that may be imposed for the driving offenses.' " *Lytle,* 374 Md. at 62, 821 A.2d at 76–77 (internal citation omitted). We have also stated that the Legislature intended "to create procedures that would be an expedient and effective deterrent and sanction against drunk driving." *Id.* at 65, 821 A.2d at 78. Extracts from the bill file

---

**10.** *See* Md.Code (1977, 1999 Repl.Vol., 2003 Supp.), § 16–205.1(g).

for House Bill 556 of 1989 "explicitly indicate an intent to limit the issues considered at resultant administrative hearings." *Id.* Thus, expediently and efficiently suspending the Maryland driving privileges of suspected drunk drivers for failing to submit to a chemical breath test also serves the legislative purpose in designing § 16–205.1 "for the protection of the public and not primarily for the protection of the accused," *Richards,* 356 Md. at 373, 739 A.2d at 68 (quoting *Motor Vehicle Administration v. Shrader,* 324 Md. 454, 464, 597 A.2d 939, 943 (1991) (internal citations omitted)).

The plain language of Md.Code (1977, 1999 Repl.Vol., 2003 Supp.), § 16–205.1(f)(7)(i) of the Transportation Article clearly does not include any time related issues pertaining to the chemical breath test or the DR–15 advice form as the word "only" limits the issues to be considered in a hearing to suspend a suspected drunk driver's driving privileges for refusing a chemical breath test to those six issues enumerated within the statute's subsection. As we may not add or delete any language from a statute, *see Gillespie,* 370 Md. at 222, 804 A.2d at 427, we hold that the two hour requirement proffered by respondent and imposed by the Circuit Court is not relevant in suspension hearings pursuant to § 16–205.1(f)(7)(i) of the Transportation Article. Accordingly, we reverse the judgment of the Circuit Court.

**JUDGMENT OF THE CIRCUIT COURT FOR ANNE ARUNDEL COUNTY REVERSED; CASE REMANDED TO THAT COURT WITH DIRECTIONS TO AFFIRM THE DECISION OF THE AGENCY. COSTS TO BE PAID BY RESPONDENT.**