12 A.3d 656

**MOTOR VEHICLE ADMINISTRATION**

v.

**Brittany Faith AIKEN.**

**No. 69, Sept. Term, 2009.**

Court of Appeals of Maryland.

Jan. 25, 2011.

12

14

Dore J. Lebowitz, Asst. Atty. Gen. (Motor Vehicle Administration, Glen Burnie, MD; Douglas F. Gansler, Atty. Gen. of Maryland, Baltimore, MD), on brief, for petitioner.

Sterling G. Mead, Rockville, MD, for respondent.

**16**

Argued before BELL, C.J., HARRELL, BATTAGLIA, GREENE, MURPHY, ADKINS and BARBERA, JJ.

BARBERA, J.

We are called upon in this case to construe, once again, the provisions of Maryland Code (2009 Repl.Vol.), § 16–205.1 of the Transportation Article ("TR"), Maryland's so-called "implied consent, administrative per se law" (hereinafter, the "Statute").[1] The Statute provides for automatic suspension of a driver's license to drive if, inter alia, a test of the driver's blood alcohol concentration produces a "result indicating an alcohol concentration of 0.08 or more at the time of testing[.]" TR § 16–205.1(b)(1)(i)(1.). The Statute entitles a driver to challenge the order of suspension at a hearing before an Administrative Law Judge ("ALJ"). At that hearing, the MVA must present a prima facie case for suspension of the license. The question we decide in the present case is whether, as part of that prima facie case, the MVA must establish the validity of the test by providing evidence that the test was administered by a "qualified person," as that term is defined and employed in Maryland Code (2009 Repl.Vol.), § 10–304 of the Courts and Judicial Proceedings Article (CJP), and that the testing equipment was approved by a State toxicologist. For the reasons that follow, we hold that the Statute does not require the MVA to present such evidence at the administrative hearing as part of its burden to present a prima facie case for suspension.

## I.

At 12:48 a.m. on July 23, 2008, Maryland State Trooper Kolle stopped Respondent, Brittany Faith Aiken, for traveling

---

1. The text of this and other pertinent provisions of the Statute is set forth, *infra*. Unless otherwise indicated, all statutory references herein are to the current version of the Statute, Maryland Code (2009 Repl. Vol.), § 16–205.1 of the Transportation Article, which went into effect on October 1, 2008. The subsections of the Statute at issue in the present case have not been changed since the time of the events at issue.

77 miles per hour in a 55–mile–per–hour zone on northbound I–270. Trooper Kolle, upon talking to Respondent, detected a strong odor of alcohol on her breath. He conducted field sobriety tests, which Respondent failed. Trooper Kolle arrested Respondent on suspicion of driving under the influence of alcohol and transported her to the State Police barracks in Rockville.

When, as in the present case, an officer who has "stop[ped] or detain[ed]" a person whom the officer "has reasonable grounds to believe is or has been driving or attempting to drive a motor vehicle while under the influence of alcohol," the officer is authorized under the Statute to request the driver to submit to a chemical breath test. *See* TR § 16–205.1(b)(2). Trooper Kolle made that request of Respondent and informed her, also pursuant to the Statute, *see id.*, of her right to refuse to submit to the breath test and, if she did, the resulting administrative sanctions. Trooper Kolle gave Respondent Form DR–15, titled "Advice of Rights DR–15," which also sets out this information and other rights afforded a driver under § 16–205.1.[2] Respondent agreed to submit to a chemical breath test and signed the DR–15 form.

Sergeant Bowling of the Maryland State Police administered the breath test. The result of the test indicated Respondent's blood alcohol concentration was 0.16 at the time of testing. Consequently, Trooper Kolle issued Respondent an

---

**2.** The form includes, among other advice, the following:

You have been stopped or detained and reasonable grounds exist to believe that you have been driving or attempting to drive a motor vehicle under circumstances requiring that you be asked to submit to a test under § 16–205.1 of the Maryland Vehicle Law. In this situation, the law deems that you have consented to take a test to measure the alcohol concentration or drug or controlled dangerous substance content in your system. You may refuse to submit to the test(s), unless you were in a motor vehicle accident resulting in the death of or life-threatening injury to another person.

For a complete description of Form DR–15 and discussion of it, see *Motor Vehicle Admin. v. Delawter*, 403 Md. 243, 249 n. 3, 941 A.2d 1067, 1071 n. 3 (2008).

Order of Suspension, in accordance with subsection (b)(3) of the Statute.[3]

Trooper Kolle and Sergeant Bowling then completed and signed Form DR–15A, titled "Officer's Certification and Order of Suspension." By signing the form, the troopers affirmed under penalty of perjury that, inter alia: Trooper Kolle had reasonable grounds to believe that Respondent was operating her vehicle while impaired; Sergeant Bowling had explained to Respondent the testing procedures and found her to be cooperative; Sergeant Bowling administered the test using Intox EC/IR equipment; and, based on the test, Respondent's blood alcohol concentration was shown to be 0.16 at the time of testing. Trooper Kolle and Sergeant Bowling made those sworn statements pursuant to subsection (b)(3)(vii) of the Statute.[4] Also pursuant to that subsection, the State Police

---

3. TR § 16–205.1(b)(3) provides in part that, when a test registers an alcohol concentration higher than 0.08, "the police officer shall":

> (i) Confiscate the person's driver's license issued by this State;
> (ii) Acting on behalf of the [Motor Vehicle] Administration, personally serve an order of suspension on the person;
> (iii) Issue a temporary license to drive;
> (iv) Inform the person that the temporary license allows the person to continue driving for 45 days if the person is licensed under this title [Vehicle Laws—Drivers' Licenses].

4. TR § 16–205.1(b)(3)(viii) provides that the police officer shall:

> Within 72 hours after the issuance of the order of suspension, send any confiscated driver's license, copy of the suspension order, and a sworn statement to the Administration, that states:
> 1. The officer had reasonable grounds to believe that the person had been driving or attempting to drive a motor vehicle on a highway or on any private property that is used by the public in general in this State while under the influence of alcohol, while impaired by alcohol, while so far impaired by any drug, any combination of drugs, or a combination of one or more drugs and alcohol that the person could not drive a vehicle safely, while impaired by a controlled dangerous substance, in violation of an alcohol restriction, or in violation of § 16–813 of this title;
> 2. The person refused to take a test when requested by the police officer, the person submitted to the test which indicated an alcohol concentration of 0.08 or more at the time of testing, or the person submitted to the test which indicated an alcohol concentration of 0.15 or more at the time of testing; and

forwarded to the MVA Respondent's driver license, the completed Form DR–15, and the completed Form DR–15A.

*The show cause hearing*

Respondent exercised her right to request a hearing before an ALJ, *see* TR § 16–205.1(b)(3)(v)(1.), "to show cause why [her] driver's license should not be suspended ... for test results indicating an alcohol concentration of 0.08 or more at the time of testing[.]" Respondent was represented by counsel at the hearing. The MVA appeared through its paper record, which consisted only of Form DR–15 and Form DR–15A. The MVA did not supply two documents that, we surmise from comments of counsel, the ALJ, and, later, the Circuit Court, are often included in such proceedings. We refer to the Maryland State Police Form 33 ("MSP Form 33"), titled "Notification to Defendant of Result of Test for Alcohol Concentration," which contains, inter alia, (1) a certification that the testing equipment is approved, and (2) the Intox EC/IR testing strip produced during Respondent's test, which includes information related to the timing of the test and the identification of the testing instrument.

The Statute expressly circumscribes the issues that can be litigated at the administrative hearing. The Statute provides in subsection (f)(7)(i) that "[a]t a hearing under this section ... the only issues shall be":

1. Whether the police officer who stops or detains a person had reasonable grounds to believe the person was driving or attempting to drive while under the influence of alcohol, while impaired by alcohol, while so far impaired by any drug, any combination of drugs, or a combination of one or more drugs and alcohol that the person could not drive a vehicle safely, while impaired by a controlled dangerous

---

3. The person was fully advised of the administrative sanctions that shall be imposed, including the fact that a person who refuses to take the test or takes a test that indicates an alcohol concentration of 0.15 or more at the time of testing is ineligible for modification of a suspension or issuance of a restrictive license under subsection (n)(1) or (2) of this section.

substance, in violation of an alcohol restriction, or in violation of § 16–813 of this title;

2. Whether there was evidence of the use by the person of alcohol, any drug, any combination of drugs, a combination of one more drugs and alcohol, or a controlled dangerous substance;

3. Whether the police officer requested a test after the person was fully advised, as required under subsection (b)(2) of this section, of the administrative sanctions that shall be imposed;

4. Whether the person refused to take the test;

5. *Whether the person drove or attempted to drive a motor vehicle while having an alcohol concentration of 0.08 or more at the time of testing;*

6. *Whether the person drove or attempted to drive a motor vehicle while having an alcohol concentration of 0.15 or more at the time of testing;* or

7. If the hearing involves disqualification of a commercial driver's license, whether the person was operating a commercial motor vehicle or held a commercial driver's license.

(Emphases added.)

The General Assembly has authorized the MVA to adopt rules and regulations to carry out the provisions of the Statute.[5] Among those regulations are two that pertain to administrative hearings conducted pursuant to the Statute. COMAR 11.11.03.07 (Subpoena) permits a party to the administrative hearing to request issuance by the ALJ of "a subpoena to require the attendance of witnesses or the production of documents," which the ALJ has the discretion to refuse "if the testimony or evidence to be offered: (1) Is immaterial, irrelevant, or unduly repetitious; or (2) Does not

---

5. *See* TR § 12–104(b) (authorizing the MVA to "adopt rules and regulations to carry out: (1) Those provisions of the Maryland Vehicle Law that relate to or are administered and enforced by the [MVA]; and (2) The provisions of any other law that the [MVA] is authorized to administer and enforce").

pertain to a genuine issue in the contested case." COMAR 11.11.03.08 (Hearing) provides in part B (Evidence) the following, pertinent to the present case:

(5) For the purpose of determining the accuracy of the test result indicating the alcohol concentration of the licensee, the following breath testing instruments shall be deemed reliable indicators of the alcohol concentration of a person:

(a) Breathalyzer Model 900;

(b) Breathalyzer Model 900A.;

(c) Intoximeter 3000; and

(d) Intox EC/IR.

(6) There shall be a rebuttable presumption that the test result of a test of blood or breath indicating the alcohol concentration of the licensee is accurate.

(7) The reliability of breath testing instruments approved in § B(5) of this regulation and the presumption established in § B(6) of this regulation may not preclude a licensee from demonstrating that the specific breath testing instrument used to test the alcohol concentration of the licensee was malfunctioning at the time of testing, or that human error caused the test result to be inaccurate.

Respondent did not request, prior to the hearing, issuance of a subpoena for either Sergeant Bowling or any of the MVA documents generated in her case. Furthermore, during her testimony at the hearing, Respondent did not contradict the certifications of Trooper Kolle and Sergeant Bowling contained on the completed Form DR–15A.

Respondent nevertheless made a motion for "No Action." Respondent argued in support of the motion that the MVA's failure to produce the MSP Form 33 and the Intox EC/IR testing strip precluded a finding that the MVA had established a prima facie case for administrative suspension of her license.

Respondent argued that the sworn statement of Sergeant Bowling on the Form DR–15A did not reflect "that the ECIR was working properly," that "it hasn't been shown that there were two tests that was [sic] run," and that the DR–15A form

also "doesn't show when the twenty minute observation period was done or conducted, at all, which is obviously step one of the test, at least according to the Regulations of the Toxicologist." Respondent also pointed out that "[t]he test strip [which the MVA did not make part of the administrative record] [6] shows the twenty minute observation period; it shows the time when the observation period started. . . . And we can't tell from what's give[n] here whether the test was administered properly." Respondent asserted that the MSP Form 33 would "certif[y] that the equipment is approved by the toxicologist. The certification that the MVA submitted here says nothing about the testing equipment. . . . And it doesn't say here which test this technician gave to my client. . . . It just says ECIR. It doesn't give model number." Respondent argued that it cannot be known from the DR–15A whether the arresting officer, rather than the test technician, had conducted the twenty-minute observation period, if one even was conducted. Finally, Respondent argued that "there's no certification in the record that the . . . administrator of the test is qualified under [§] 10–304 [of the CJP]" and no certification of the machine.

Respondent relied on subsection (a)(2) of the Statute to argue that the MVA's prima facie case must include evidence of compliance with sections 10–302 through 10–309 of the CJP. Subsection (a)(2) provides in pertinent part that "[a]ny person who drives or attempts to drive a motor vehicle on a highway . . . in this State is deemed to have consented, subject to the provisions of §§ 10–302 through 10–309, inclusive, of the Courts and Judicial Proceedings Article, to take a test if the person should be detained on suspicion of driving or attempting to drive while under the influence of alcohol. . . . "

The ALJ stated for the record, and Respondent's counsel agreed, that the motion for "No Action" was being requested "because of the failure of the [MVA] to include the notice to

---

6. The record of the administrative hearing suggests that counsel for Respondent had in hand at that hearing the MSP Form 33 and EC/IR test strip.

defendant [of] a test result (i.e., the MSP Form 33) and the test strip." The ALJ denied the motion, reaffirming his ruling earlier in the hearing that "the failure, if there was one, would be an affirmative defense and you would have to show if it wasn't complied with." We infer that the ALJ was referring to Respondent's failure to present any such evidence, notwithstanding that the regulations provided Respondent with the means to do so. The decision of the ALJ also reflects his reliance on subsection (f)(7)(ii) of the Statute, which states:

> The sworn statement of the police officer and of the test technician or analyst shall be prima facie evidence of a test refusal, a test result indicating an alcohol concentration of 0.08 or more at the time of testing, or a test result indicating an alcohol concentration of 0.15 or more at the time of testing.

The ALJ, noting that he "[hadn't] heard anything which makes me believe that [the relevant provisions of the CJP] weren't followed," ruled that "completion of the certification [on Form DR–15A] is prima facie that there's been a following of the rules." The ALJ concluded that the completed DR–15A form satisfied the prima facie case because the form indicated that Respondent had been advised properly of her rights and the alcohol concentration test was administered in accordance with relevant regulations.

At the conclusion of the hearing, the ALJ complied with the requirements of the Statute that certain findings be made.[7]

---

7. TR § 16–205.1(f)(8)(i) provides in pertinent part that:

> After a hearing, the [MVA] shall suspend the driver's license or privilege to drive of the person charged under subsection (b) or (c) of this section if:
> 1. The police officer who stopped or detained the person had reasonable grounds to believe the person was driving or attempting to drive while under the influence of alcohol . . .;
> 2. There was evidence of the use by the person of alcohol . . .;
> 3. The police officer requested a test after the person was fully advised, as required under subsection (b)(2) of this section, of the administrative sanctions that shall be imposed; and
> 4. A. The person refused to take the test; or

In particular, the ALJ found that an "officer requested that the Licensee take a test as defined in Maryland Transportation 16–205.1(a)(1)(iii) and that she scored a .16 grams of alcohol per 210 liters of breath." As provided by subsection (b)(1)(i)(2) of the Statute, the ALJ suspended Respondent's driver's license for 90 days.

*Judicial review in the Circuit Court*

Respondent filed in the Circuit Court for Montgomery County a petition for judicial review of the ALJ's decision. *See* Md.Code (2009 Repl.Vol.), § 10–222(h) of the State Government Article. Respondent reduced the arguments she made before the ALJ to the single contention that the MVA failed to make a prima facie case for license suspension because there is no evidence in the record either that a "qualified person" administered the test or that the testing equipment had been approved by a State toxicologist, as provided in CJP § 10–304. That section provides that a breath test "shall be administered by a qualified person with equipment approved by the toxicologist under the Postmortem Examiners Commission," and defines "qualified person" as "a person who has received training in the use of the equipment in a training program approved by the toxicologist under the Postmortem Examiners Commission. . . ." Respondent argued that, because the DR–15 and DR–15A forms the troopers signed in the present case contain no such express certifications, the ALJ should have sustained the motion for "No Action."

The MVA, which was represented by counsel before the Circuit Court, disagreed with Respondent's interpretation of the Statute. The MVA directed the court to the language of TR § 16–205.1(f)(7)(ii) (providing in pertinent part that the "sworn statement" of the officer and test technician shall be prima facie evidence of a test result indicating an alcohol

---

B. A test to determine alcohol concentration was taken and the test result indicated an alcohol concentration of 0.08 or more at the time of testing.

concentration of 0.08 or more at the time of testing) and argued that the DR–15A form that was presented to the ALJ sufficed to establish a prima facie case for administrative license suspension.

The Circuit Court agreed with Respondent's view that the MVA's prima facie case must include evidence that a qualified person administered the test and that testing equipment approved by the State toxicologist was used. The court reversed the decision of the ALJ, ruling that there was not "substantial and competent" evidence of those facts in the administrative agency record.

The MVA filed a petition for writ of certiorari, which we granted, *Motor Vehicle Admin. v. Aiken,* 409 Md. 47, 972 A.2d 861 (2009), to address the following question:

Where the evidence presented to the ALJ included prima facie evidence of a test result in the form of a sworn statement by a test technician or analyst that a driver had a test result indicating an alcohol concentration of 0.15 or more, as provided in TR § 16–205.1(f)(7)(ii), did the circuit court err in finding a lack of competent material and substantial evidence to support suspension of the driver's license on the ground that the record did not also include various other evidence that is not required by the statute, specifically, (a) a certification that the approved test equipment was used and that the technician or analyst is a 'qualified person'; (b) the actual test strip used in the test; and (c) corroboration of the test results on a separate form, MSP–33?

## II.

The MVA asks us to reverse the judgment of the Circuit Court on the ground that, contrary to that court's ruling, there exists substantial evidence supporting the administrative suspension of Respondent's license. The MVA identifies the crux of the issue before us as whether there is substantial evidence in the administrative record of an un-rebutted prima facie case for suspension of Respondent's driver's license. In arguing

that the record presents a prima facie case, the MVA takes the position that "the sworn statement at the bottom of the form [DR–15A] satisfies the statutory requirement [of the prima facie case] under § 16–205.1(f)(7)(ii)." The MVA finds support for that position in the plain language of the Statute, its legislative history, the statutory scheme of which it is a part, and this Court's cases on the subject.

Respondent counters with the arguments she made to the ALJ and the Circuit Court. She argues that more is required of the prima facie case for administrative license suspension under the Statute than was presented by the MVA in this case; specifically, the MVA is obligated to present evidence (not included in the currently worded DR–15A certification) that the test technician is a "qualified person," as defined in CJP § 10–304(a)(3), and the breath test was performed on "equipment approved by the toxicologist under the Postmortem Examiners Commission," as provided in CJP § 10–304(b)(1). Respondent relies in support of that argument on the reference in subsection (a)(2) of the Statute, which states in pertinent part that the driver's consent to the test is "subject to the provisions of §§ 10–302 through 10–309, inclusive, of the Courts and Judicial Proceedings Article." For the reasons we shall explain, the MVA has the better part of the argument.

## III.

Judicial review of administrative decision-making "is constrained." *See, e.g., Motor Vehicle Admin. v. Shea,* 415 Md. 1, 14, 997 A.2d 768, 775 (2010) (citing *Motor Vehicle Admin. v. Delawter,* 403 Md. 243, 256–57, 941 A.2d 1067, 1076 (2008)); *see also* Md.Code (1984, 2009 Repl.Vol.), § 10–222(h)(3) of the State Government Article ("SG").[8] The role of

---

8. SG § 10–222(h)(3) provides that a reviewing court may reverse or modify an administrative decision of a state agency only if a "substantial right" of the petitioner may have been prejudiced by an agency's finding, conclusion, or decision that:

(i) is unconstitutional;

the courts in administrative agency review can be summarized by the following:

A court's role in reviewing an administrative agency adjudicatory decision is narrow; it is limited to determining if there is substantial evidence in the record as a whole to support the agency's findings and conclusions, and to determine if the administrative decision is premised upon an erroneous conclusion of law.

In applying the substantial evidence test, a reviewing court decides whether a reasoning mind reasonably could have reached the factual conclusion the agency reached. A reviewing court should defer to the agency's fact-finding and drawing of inferences if they are supported by the record. A reviewing court must review the agency's decision in the light most favorable to it; . . . the agency's decision is prima facie correct and presumed valid, and . . . it is the agency's province to resolve conflicting evidence and to draw inferences from that evidence.

Despite some unfortunate language that has crept into a few of our opinions, a court's task on review is not to substitute its judgment for the expertise of those persons who constitute the administrative agency. Even with regard to some legal issues, a degree of deference should often be accorded the position of the administrative agency.

*Shea*, 415 Md. at 14–15, 997 A.2d at 775–76 (internal quotation marks and citations omitted).

▆ This case involves the ALJ's interpretation and application of the Statute, which the MVA administers. Accordingly, we will review the ALJ's decision for legal correctness, giving appropriate weight to the MVA's interpretation of the Statute.

---

(ii) exceeds the statutory authority or jurisdiction of the final decision maker;

(iii) results from an unlawful procedure;

(iv) is affected by any other error of law;

(v) is unsupported by competent, material, and substantial evidence in light of the entire record as submitted; or

(vi) is arbitrary or capricious.

28

## IV.

▮▮▮▮▮ The legal question we decide in this case requires us to discern the intent of the General Assembly in enacting the Statute. That undertaking

> begins with the language of the statute as the primary source of legislative intent. When the language is clearly consistent with the apparent purpose of the statute and the result is not absurd, we have held that no further inquiry into legislative intent is required. Beyond plain meaning, the purpose of the statute may be ascertained by examining the Legislature's statement of a statute's purposes, and courts may consider other "external manifestations" or "persuasive evidence" indicating the legislative intent. The language of a statute cannot be divorced from its context. [Thus], even where the language of the statute is plain, its meaning is controlled by its context. In short, the statutory language must be construed in light of and governed by its context within the overall statutory scheme. An appellate court may consider evidence such as a bill's title and function paragraphs, amendments that occurred as it passed through the Legislature, and its relationship to earlier and subsequent legislation to ascertain the Legislature's goal in enacting the statute.

*Motor Vehicle Admin. v. Lytle*, 374 Md. 37, 57, 821 A.2d 62, 73–74 (2003) (citations omitted).

▮▮▮▮▮ Before addressing the particular question of statutory interpretation at issue here, we restate the legislative purpose behind the Statute. That purpose is " 'to reduce the incidence of drunk driving and to protect public safety by encouraging drivers to take alcohol concentration tests; the [S]tatute [is] not meant to protect drivers.' " *Shea*, 415 Md. at 15–16, 997 A.2d at 776 (quoting *Motor Vehicle Admin. v. Shepard*, 399 Md. 241, 255, 923 A.2d 100, 108 (2007) (citing *Motor Vehicle Admin. v. Richards*, 356 Md. 356, 374, 739 A.2d 58, 68 (1999))); *accord Motor Vehicle Admin. v. Jones*, 380 Md. 164, 179, 844 A.2d 388, 397 (2004). The Statute is remedial in nature, and its purposes, stated more particularly,

are, first, to help effectuate the administrative goals of the MVA in ridding Maryland roadways of drunk drivers and, second, to encourage both general compliance with Maryland law as well as specific fulfillment of the consent to taking a properly requested chemical breath test implied by a motorist's entry upon and usage of this State's roads. *Richards,* 356 Md. at 374, 739 A.2d at 68. To that end, the General Assembly crafted the Statute to provide for "speedy Administrative sanctions [that] would help the offender to recognize the cause and effect relationship between the offense and the sanction which would otherwise be weakened by lengthy delays in the court processes." *Lytle,* 374 Md. at 63, 821 A.2d at 77 (quoting Governor's Legislative Office, "Positive Aspects of Administrative Per Se," House Bill 556 (1989)). The procedures attendant to administrative license suspension under the Statute, moreover, are "intended to be informal and summary in nature." *Richards,* 356 Md. at 376–77, 739 A.2d at 70.

 The question before us deals with the prima facie case the Statute requires the MVA to present at the administrative hearing. The answer to that question is straightforward, and is found in the plain language of subsection (f)(7)(ii) of the Statute. To repeat, that subsection provides:

> The sworn statement of the police officer and of the test technician or analyst shall be prima facie evidence of a test refusal, a test result indicating an alcohol concentration of 0.08 or more at the time of testing, or a test result indicating an alcohol concentration of 0.15 or more at the time of testing.

The content of the "sworn statement" required by subsection (f)(7)(ii) is detailed in subsection (b)(3)(viii). *See supra* note 4. That subsection provides that the "sworn statement" the police officer is required to forward to the MVA must state in pertinent part that the person detained on suspicion of driving under the influence of alcohol either refused the test, or as here, "submitted to the test" and the test "indicated an alcohol concentration of 0.15 or more at the time of testing." The

Form DR–15A contains a "CERTIFICATION OF POLICE OFFICER," that includes in pertinent part the following preprinted language:

> I certify under penalty of perjury that the contents of the foregoing document [which recounts the officer's reasonable grounds for detaining a person on suspicion of driving or attempting to drive while under the influence of alcohol] are true and correct to the best of my knowledge, information and belief, and after being fully advised of sanctions that shall be imposed as provided in the Advice of Rights Form DR–15, the person described above (1) refused to take a test to determine alcohol concentration when requested by this officer, [or] (2) was tested and the test result indicated an alcohol concentration of 0.08 or more, as indicated above. . . .

The preprinted language in the "CERTIFICATION OF TEST TECHNICIAN OR ANALYST" portion of Form DR–15A sets forth all the components of the "sworn statement" required by TR § 16–205.1(b)(3)(vii).[9] The certification language states: "I do solemnly declare and affirm, under penalty of perjury, and upon personal knowledge that I performed a test for alcohol concentration on the person described above and the test results were 0.___ from the Intox EC/IR." The certification contains boxes for the tester to check to indicate whether the "Testing procedure was explained[,]" the "Person appeared in good health[,]" and if there was a "Refusal–Insufficient Breath[,]" in which case the tester "further cer-tif[ies] that the driver refused to take a test when the driver failed to provide sufficient breath samples for analysis." There follows space for the test technician to provide an "EXPLANATION: (Specify instructions issued and behavior of driver)."

---

9. TR § 16–205.1(b)(3)(viii) specifically applies to a police officer's sworn statement. With the exception of the grounds for detaining the driver, however, the required content would seem also to apply to the sworn statement required of the test technician or analyst.

In the present case, the certifications on the Form DR–15A were signed by Trooper Kolle and Sergeant Bowling. By his signature on the certification Trooper Kolle certified, among other things, that Respondent was tested and the test result indicated a blood alcohol concentration of more than 0.08. Sergeant Bowling, in turn, certified, among other things, that Respondent's test produced a 0.16 blood alcohol concentration.

The DR–15A form containing the certifications of Trooper Kolle and Sergeant Bowling satisfies the requirements of the subsection (f)(7)(ii) "sworn statement." That subsection, moreover, could not be more plain in providing that the MVA's prima facie case requires only those sworn statements.

 Notwithstanding the clarity with which the General Assembly has spoken in subsection (f)(7)(ii) of the Statute, Respondent argues that the MVA also must establish that the test result was obtained by a "qualified person" using equipment approved by the State toxicologist, as set forth in CJP § 10–304. As noted, Respondent relies for this proposition on the prefatory language contained in subsection (a)(2) of the Statute that "[a]ny person who drives or attempts to drive a motor vehicle on a highway . . . is deemed to have consented, subject to the provisions of §§ 10–302 through 10–309, inclusive, of the Courts and Judicial Proceedings Article, to take a test if the person should be detained on suspicion of driving or attempting to drive while under the influence of alcohol. . . ." Respondent's reliance on this language is poorly placed, for any of several reasons.

 To begin, the Statute, when viewed in its entirety, undercuts Respondent's argument. Although we have commented that the provisions of the Statute and CJP §§ 10–302 through 10–309 are to be read "in pari materia," *see, e.g., Motor Vehicle Admin. v. Dove,* 413 Md. 70, 81, 991 A.2d 65, 71 (2010) (citing *Lowry v. State,* 363 Md. 357, 368–69, 768 A.2d 688, 694 (2001)); *see also Lytle,* 374 Md. at 43, 821 A.2d at 65 (quoting the language of subsection (a)(2) of the Statute for the proposition that the "Transportation Article authorizes

tests 'subject to the provisions of §§ 10–302 through 10–309, inclusive, of the Courts and Judicial Proceedings Article'"), it does not follow from these observations that every subsection of the Statute impliedly incorporates and requires compliance with one or more of those CJP sections. Tellingly, the Statute plainly identifies which of its many provisions require compliance with the strictures of one or another of those sections of the CJP, and subsection (f)(7)(ii) is not among them.

Subsection (c) of the Statute, which addresses testing for alcohol concentration of a person who has been involved in an accident involving a death or serious bodily injury of another person, provides that the officer, with the requisite reasonable grounds, may direct the person to submit to a breath test or blood test or both, and, *if the detaining officer so directs,* then "the provisions of § 10–304 of the Courts and Judicial Proceedings Article shall apply." Subsection (g) of the Statute (entitled "Withdrawal of initial refusal to take test; subsequent consent") also refers expressly to § 10–304 of the CJP. That subsection states that the ALJ, in determining whether a person properly withdrew his or her initial refusal and consented to take the test, may examine a number of factors, among which are "[w]hether a qualified person, as defined in § 10–304 of the [CJP], to administer the test and testing equipment were readily available," see (g)(3)(ii), and "[w]hether the delay in testing would have interfered with the attention to other duties of the arresting officer or a qualified person, as defined in § 10–304 of the [CJP]," *see* (g)(3)(iv).

In contrast, subsection (f)(7)(ii) of the Statute, at issue in the present case, makes no mention of the requirements of CJP § 10–304, much less that those requirements must be met to establish a prima facie case for administrative license suspension. If the General Assembly intended for the prima facie case to include a showing that the test was administered by a "qualified person," as defined in § 10–304 of the CJP, "with equipment approved by the toxicologist under the Postmortem Examiners Commission," as further prescribed by § 10–304,

surely the General Assembly knew precisely how to do it.[10]

Our construction of subsection (f)(7)(ii) is further supported by the reasoning we employed in *Jones*, 380 Md. 164, 844 A.2d 388, to reject a similar effort by a licensee to require more of the prima facie case than is set forth in subsection (f)(7)(ii). It was argued in *Jones* that, when a person has refused to take a breath test, the MVA must establish at the show cause hearing that the arresting officer complied with the requirement of CJP § 10–303, which provides that the chemical breath test of the driver must be taken within two hours of his or her apprehension. *Jones*, 380 Md. at 175, 844 A.2d at 394.

We made several points in rejecting that argument. We observed that the issues that can be raised at the administrative hearing are limited to those grounds expressly set forth in TR § 16–205.1(f)(7)(i), and that compliance with the two-hour testing window was not listed as one of those cognizable issues. *Jones*, 380 Md. at 177, 844 A.2d at 395–96. We also looked to subsection (f)(8)(i) of the Statute, which mandates suspension of the driver's license if the ALJ makes four expressly stated findings, none of which addresses the timing of the test. *Jones*, 380 Md. at 177–78, 844 A.2d at 396; *see*

---

**10.** Respondent's "incorporation" argument is further belied by the inclusion in the Statute of subsection (e), "Administration of tests." That subsection provides:

(1) The tests to determine alcohol concentration may be administered by an individual who has been examined and is certified by the Department of State Police as sufficiently equipped and trained to administer the tests. (2) The Department of State Police may adopt regulations for the examination and certification of individuals trained to administer tests to determine alcohol concentration.

Notably, this subsection, like subsection (f)(7)(ii), does not refer to CJP § 10–304 or the criteria set forth therein for a technician to be a "qualified person" to administer the test. Comparison of subsection (e) of the Statute with CJP § 10–304(a)(3) indicates—consistent with the Statute's legislative purpose—the availability of separate administrative and criminal proceedings, complete with separate protocols, standards, and procedures. We surmise, however, that, for practical purposes, police departments conform to the requirements contained within CJP §§ 302 through 309 in conducting chemical breath tests to ensure that the results can be used in both administrative and criminal proceedings.

*supra* note 7. Finally, we observed that a "plain language interpretation limiting the (f)(7)(i) factors to those specifically enumerated in the statute is in line with" the purpose of the Statute, which is to provide "a swift penalty which is separate from any criminal penalties that may be imposed for the driving offenses," by implementing "procedures that would be an expedient and effective deterrent and sanction against drunk driving." *Jones*, 380 Md. at 178–79, 844 A.2d at 396–97 (citations omitted). For those reasons, we held in *Jones* that compliance with the two-hour window testing requirement set forth in CJP § 10–303(a)(2) is *not* required to be a part of the MVA's prima facie case for administrative license suspension. *Id.* at 179, 844 A.2d at 397.

Much of the reasoning we employed in *Jones* serves equally well to rebut the arguments Respondent presents here. We begin with the final point made in *Jones*, that the Statute "was written to provide, in cases of drunk driving, a swift penalty which is separate from any criminal penalties that may be imposed for the driving offenses." *Id.* at 178, 844 A.2d at 396 (internal quotation marks and citation omitted). The Legislature furthers this legislative purpose by providing that the prima facie case requires only the sworn statements of the detaining police officer and the technician who administered the test, attesting to either the person's refusal to take the test, or a test result indicating a blood alcohol concentration of 0.08 (or 0.15) or more at the time of testing. Moreover, much as we reasoned in *Jones*, the findings the ALJ must make before directing that the person's license be suspended do not include a finding that the testing was done by a "qualified person," as defined in CJP § 10–304(a)(3), with equipment authorized by the toxicologist, as required by CJP § 10–304(b).[11] All that is required under subsection (f)(8) in

11. Read in its entirety, CJP § 10–304 mainly addresses criminal trials involving alcohol-related offenses. *See, e.g.,* CJP §§ 10–304(c)(1)(iii)(3.) ("If the *District Court* is deprived of jurisdiction under circumstances in which a *defendant* is entitled to and demands a *jury trial,* or appeals from the *District Court* to a *circuit court,* the State is not required to file a second notice."); 10–304(d)(2)(i) ("If a *defendant* desires the toxicolo-

this regard is a finding by the ALJ, in the case of a person who has taken the test, that "[a] test to determine alcohol concentration was taken and the test result indicated an alcohol concentration of 0.08 or more at the time of testing." *See* (f)(8)(i)(4.).

Even further support for our conclusion that the Legislature did not intend to incorporate the certification requirements of CJP § 10–304 in administrative license suspension situations is found in the fact that license suspension occurs automatically, solely on the basis of the test result as it appears on the DR–15A form, whenever a person opts *not* to contest the test result. It defies common sense to conclude, as Respondent evidently would have us do, that the General Assembly places upon the MVA a greater burden of making out a prima facie case for suspension when the driver requests a show-cause hearing than is required when the driver does not seek to contest the certified test result.

Undeniably, in the present case, the MVA did not present to the ALJ the Intox EC/IR strip produced during Respondent's breath test. That strip, we assume, would have identified specifically the testing equipment used and *theoretically* have been useful in challenging the accuracy of the alcohol concentration test.[12] Equally certain, however, is that Respondent, and any other person in her position, was entitled to request from the ALJ, prior to the hearing, a subpoena for production of the document. *See supra* p. 6; COMAR 11.11.03.07.

In other words, Respondent and any similarly situated person is entitled to and has the means with which to attempt to *rebut* the presumption of reliability of the breath

gist to be present and testify *at trial* as a witness, the *defendant* shall file a request for a subpoena for the toxicologist at least 20 days before the *trial in the appropriate court.*"). (Emphases added).

12. We have noted that Respondent evidently had in her possession at the time of the administrative hearing the test strip produced during her breath test. *See supra* note 6. The information supplied on the test strip, later read into the record at the Circuit Court hearing, confirms the certifications on the Form DR–15A.

test result.[13] But the Statute does not mandate that the MVA establish the validity of the test, as part of its prima facie case. To the contrary, and for all the reasons we have discussed, the Statute expressly provides that the technician's and the officer's sworn statements, without more, establish a prima facie case of drunken driving, for purposes of administrative license suspension.

## V.

We have said that, in the present case, Sergeant Bowling administered the test, the result of which indicated that Respondent had a blood alcohol concentration of 0.16 at the time of testing. The sergeant signed the sworn certification on the Form DR–15A, attesting to the facts that he performed the test, explained the procedures, and the test result from the EC/IR instrument was 0.16. Trooper Kolle also included the test results in his sworn certification that appears on the Form DR–15A. The MVA offered that form at the administrative hearing and, based on the sworn statements in it, the ALJ correctly found that the MVA had made a prima facie showing of Respondent's drunk driving. Because that finding was supported by substantial evidence, the ALJ properly suspended Respondent's license.

**JUDGMENT OF THE CIRCUIT COURT FOR MONT-GOMERY COUNTY REVERSED; CASE REMANDED TO THAT COURT WITH DIRECTIONS TO AFFIRM THE DECISION OF THE MOTOR VEHICLE ADMINISTRA-TION. COSTS TO BE PAID BY RESPONDENT.**

---

**13.** We do not reach the question whether, once the licensee presents sufficient evidence to rebut the presumption of reliability, the burden shifts back to the MVA to persuade the fact finder that the test was reliable. That question was not briefed by the parties, nor is it otherwise presented in the record before us.